648 P.2d 142

**The STATE of Arizona, Appellee,**

v.

**James Francis CAWLEY, Appellant.**

**No. 2 CA–CR 2433.**

Court of Appeals of Arizona, Division 2.

May 26, 1982.

Rehearing Denied June 23, 1982.

Review Denied July 13, 1982.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Jeffrey A. Marks, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Pursuant to a plea agreement, appellant pled nolo contendre to three counts of aggravated assault in exchange for three counts of child molesting being dismissed. Appellant was sentenced to the maximum sentence on each count, 1.875 years, the sentences to run consecutively.

Appellant has raised four points on appeal, none of which merits reversal. His first contention is that the material developed in the presentence report was wrongly used against him because he was not given *Miranda*[1] warnings by the preparer of the report when he was interviewed after entering his plea. He relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), and *Battie v. Estelle*, 655 F.2d 692 (5th Cir. 1981). In *Estelle v. Smith*, supra, the supreme court held that when faced with an in-custody, court-ordered psychiatric inquiry, the defendant's statements to the doctor were not freely and voluntarily given and the state could only use the statements in the penalty phase if the defendant had been apprised of and waived his rights under *Miranda*. In *Battie v. Estelle*, supra, the defendant was also confined at the time of his being questioned under court order prior to trial by a psychiatrist to determine whether he was competent to stand trial and whether he was insane at the time of the crime. The state subsequently called the psychiatrist to testify at the penalty stage of the defendant's trial and the Fifth Circuit Court of Appeals applied the rationale of *Estelle v. Smith*, supra, in overturning the sentence.

Appellant herein admits that the subject questioning was not done while he was in custody and was not done pursuant to a court order. However, those factors are not the distinguishing factors which are important for us. What is important is that *Miranda* sought to give a defendant fair warning where the coercive atmosphere of the questioning was likely to overbear his desire to remain silent. A pretrial psychiatric examination is part of the accusatory stage of a criminal proceeding. On the other hand, appellant's cooperation with the adult probation office is not an accusatory stage of the proceedings. Rather, it is important that a defendant and the adult probation officer have a relationship which encourages an accurate appraisal of a defendant's social and criminal history and a recommendation for beneficial rehabilitative treatment which will best modify a defendant's behavior to conform to society's requirements. It has been held that *Miranda* is not applicable to the routine parole interview between a parole officer and a parolee because

"[a] parole officer acts as a guide and counselor to the parolee in his efforts to achieve and maintain rehabilitation. To work effectively the parole officer must know the parolee's whereabouts and activities both social and business.... These routine reports and interviews are invariably non-custodial and, therefore, outside the ambit of *Miranda*. Moreover, implicit in the relationship is the requirement that the parolee cooperate fully and unreservedly in the parole experiment." *State v. Davis*, 67 N.J. 222, 337 A.2d 33 at 35 (1975).

We agree with the reasoning of the New Jersey Supreme Court.[2]

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The New Jersey Supreme Court, however, was faced with a situation other than the ideal one described. The defendant in that case was in jail charged with having committed an armed robbery when he was questioned by his parole officer and it was obvious that the offi-

cer knew of the charge against him since the questions asked related to his whereabouts on the date of the robbery. The court said that admittedly the question was pertinent as to whether he was adhering to his parole conditions and that to attempt to use that in-custody statement outside the framework of the parole system and at the defendant's subsequent criminal trial on the charge of armed robbery would

■ Our situation is more closely akin to that in *People v. Parker,* 101 Misc.2d 800, 421 N.Y.S.2d 561 (1979). In that case, the New York Supreme Court dealt with a situation where a parolee initiated routine contact with his parole officer following an arrest and prior to a subsequent court appearance and the parolee was advised "to come in and see" his parole officer following the next court appearance. As the court pointed out, such a request by the court does not convey the element of the police-dominated atmosphere of custodial interrogation that was the basis of *Miranda,* but rather the questioning was routine and an integral part of the parole process. In the instant case, we can say that the questioning was routine and integral part of the sentencing process. If a defendant chooses to cooperate, the interview process offers an offender the opportunity to help the probation officer make a recommendation which would enable a defendant to eventually assume his responsibilities as any other well-adjusted citizen. Our decision is not to be construed to pertain to a situation where the presentence investigation is accusatory in nature and the probation officer has as his mission the investigation of specific criminal activity. Such was not the case here and we are not addressing ourselves to such a situation. We hold that where the presentencing investigation is not accusatory in nature and merely a routine and integral part of the sentencing process, a defendant is not entitled to Miranda warnings since the in-custodial coercive atmosphere of *Miranda* is not present and the questioning is not accusatory in nature.

■ Appellant's claim that the sentences imposed were excessive is also without merit. The trial court stated that he had considered everything in the file, including the recommendations of the attorneys. The material from appellant's attorney, which was alluded to by the judge, included the points which appellant now raises as being in mitigation. A sentencing judge is not required to make findings about circumstances on which he does not rely in assessing a sentence. *State v. Inglish,* 129 Ariz. 444, 631 P.2d 1102 (1981). The trial court had before it enough aggravating circumstances to warrant the sentences imposed. Appellant's history of peculiar sexual behavior is documented in the presentence report and his prowling and voyeurism are discussed in the report and in his United States Navy record. He was pleading to sexual offenses against his own daughter and a neighbor's child and admitted to incestuous relations with his half-sister. While none of these prior incidents resulted in convictions, they can still properly be used in sentencing. See *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The presentence report showed a defendant obsessed with aberrant sexual behavior and the evidence was more than adequate to support the sentences imposed.

■ Appellant claims there were defects in his Rule 32 proceeding which require the granting of relief. We do not agree. Appellant's Rule 32 proceeding contains arguments about his sentence which we have already discussed. In addition, two procedural points were raised. The first is that the trial court exceeded the 10-day time limit within which it was supposed to issue a decision. See Rule 32.8(d), Arizona Rules of Criminal Procedure, 17 A.R.S. However, the rule provides no sanction for such a violation and appellant has not alleged any prejudice resulting from the delay. Second, appellant notes that the state filed no response to his motion for rehearing and did not speak in opposition to his motion at the hearing. However, the judge denied appellant's motion for rehearing after appellant's presentation without giving the state an opportunity to respond. The fact that the state filed no written response requires no explanation and the trial court is not bound to grant appellant's motion just because the state failed to respond to it.

require that he first have been advised of his *Miranda* rights and knowingly and voluntarily

waive them.

 Finally, appellant contends that the punishment applied to him was cruel and unusual because he was taken immediately into custody and given no time to settle his affairs. A defendant released until sentencing must be prepared to finally go into custody after sentencing. See e.g., *McKellar v. Arizona State Department of Corrections*, 115 Ariz. 591, 566 P.2d 1337 (1977).

Our review of the record for fundamental error shows none. However, appellant's sentences should be modified to show that he is sentenced to terms of imprisonment and committed to the custody of the Department of Corrections. *State v. Razinha*, 123 Ariz. 355, 599 P.2d 808 (App.1979).

Affirmed as modified.

HATHAWAY and BIRDSALL, JJ., concur.