739 P.2d 1333

**STATE of Arizona, Appellee,**

v.

**Robert Clark STUCK, Appellant.**

**1 CA–CR 9704.**

Court of Appeals of Arizona, Division 1, Department A.

March 17, 1987.

Review Denied July 14, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div., and Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for appellant.

## OPINION

CONTRERAS, Judge.

This is an appeal from convictions and sentences imposed following a jury trial in which appellant was adjudged guilty of one count of aggravated assault, a class 3 dangerous felony, one count of kidnapping, a class 2 dangerous felony, and 3 counts of sexual assault, a class 2 dangerous felony. Aggravated maximum sentences were imposed on each count. These sentences

**18**

were ordered to be served consecutively for an aggregate period of 99 years.

The appellant has presented a number of issues on appeal:

(1) Did the trial court err by granting the state's motion *in limine* to exclude evidence concerning prior consensual sexual activity of the victim?

(2) Did the trial court err in admitting statements made by appellant after being advised of his *Miranda* rights because they were coerced and tainted by statements he made prior to being advised of his *Miranda* rights?

(3) Did the trial court err in denying appellant's motion to exclude his expressions of guilt made on June 20, 1985, on the ground that they constituted plea negotiations?

(4) Did the prosecutor improperly comment on appellant's post-arrest silence during closing argument?

(5) Did the trial court err in imposing consecutive sentences?

(6) Did the trial court err in finding two particular aggravating circumstances?

(7) Were the sentences imposed excessive, and did they constitute cruel and unusual punishment?

We conclude that the trial court did not err with respect to any of the matters presented by appellant. Additionally, we conclude that the prosecutor's statements in closing argument were not improper. Therefore, we affirm the convictions and sentences.

Appellant Robert Clark Stuck was charged by indictment with one count of aggravated assault, one count of kidnapping, and three counts of sexual assault. The offenses were alleged to be dangerous because of the use of a knife during the commission of the offenses. The state also alleged a prior conviction for kidnapping. The defense raised at trial was consent. The jury found appellant guilty as charged. The state did not attempt to prove the prior conviction. Appellant filed a motion for a new trial which was denied. Appellant was sentenced to aggravated maximum terms

of 15 years for aggravated assault, 21 years for kidnapping, and 21 years on each of the sexual assault counts. All terms were ordered to run consecutively. The trial court stated its reasons for imposing aggravated maximum terms, and for imposing consecutive sentences. The trial court credited appellant with 184 days for pre-sentence incarceration. Appellant timely filed a notice of appeal and has presented a number of issues for our consideration. These will be discussed in detail following a recitation of the facts.

The relevant facts follow, viewed in a light most favorable to sustaining the verdict. *State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978). The sixteen-year-old victim was married and had a child. She was temporarily staying with her sister at a trailer park in Mesa. On the day of the incident, she was walking through the park, seeking a marijuana cigarette. When she passed by appellant's trailer, he offered her a beer, and she accepted. She waited on the step leading into his trailer. He returned with the beer, and then put a knife to her throat. He took her into the trailer and then bound her, gagged her, and threatened to kill her with a knife if she resisted. Over the course of the evening and throughout the next morning, appellant perpetrated six acts of vaginal intercourse, two acts of anal intercourse and two acts of oral sexual contact. In the morning, appellant agreed to let the victim go if she promised not to tell. She agreed. The victim left appellant's trailer and immediately went to a nearby shop and called the police. The police apprehended appellant when the victim pointed him out to them as he was leaving the trailer park as a passenger in a truck. The victim positively identified appellant as the person who assaulted her.

Appellant was taken to the police station, where he was interviewed by Officer William Richardson for approximately 15 minutes before being advised of his *Miranda* rights.[1] Appellant made some statements during that period. He was then read his rights. Subsequently, he made further

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

statements in which he claimed the sexual activity was consensual. He prepared and signed a written statement. That evening, Officer Richardson, after a search of the trailer, initiated a second interview with appellant to discuss items found during the search. Appellant answered a few questions before invoking his right to counsel.

Three days later, Officer Richardson went to the jail after learning that appellant wished to speak to him. Appellant immediately stated that he wished to plead guilty, that he was in the wrong, and that the police had found enough evidence against him. He asked that the police keep his girlfriend "out of it." The officer informed appellant that only the prosecutor could make a deal.

## PRIOR CONSENSUAL
## SEXUAL ACTIVITY

The first issue raised by appellant is whether the trial court erred by granting the state's motion *in limine* to exclude any questioning of the victim regarding prior consensual sexual activity. Prior to trial, the court held a hearing to determine whether the evidence should be excluded under the guidelines of *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946 (1976). Specifically, appellant sought to introduce evidence of the victim's liaison with a married man five days before the incident between appellant and the victim. Appellant contended that the evidence showed the victim's availability for consensual sex and would explain the motile sperm found in the victim's vagina when she was examined after the alleged assault. The state countered that *Pope* precluded evidence of such prior consensual activity, and that it was impossible for sperm to remain motile in the vaginal cavity for five days. We find no error in the trial court's ruling.

Under *Pope*, evidence of a rape victim's prior unchaste acts is excluded except in situations involving evidence of prior consensual sexual intercourse with the accused or involving testimony which directly refutes physical or scientific evidence such as the victim's alleged loss of virginity,

origin of semen, disease or pregnancy. 113 Ariz. at 27, 545 P.2d at 943. The evidence at issue clearly does not fall within one of the four exceptions to the exclusion set forth in *Pope*. Appellant argues that an additional exception to *Pope* should be added: situations where the jury might be especially sympathetic to the victim, such as "children, nuns, grandmothers, elderly women, handicapped persons, such as blind women, etc." We see no valid reason to expand the list of exceptions set forth in *Pope*. The thrust of *Pope* is that, generally, the prior sexual history of the victim is not relevant to the issue of whether she consented to intercourse during the incident in question. The prior activity is certainly not made more relevant by the fact that the victim is a child, a nun, blind, or has any of the other attributes suggested by appellant. All sexual assault victims are, to some degree, bound to cause jury sympathy. The exception suggested by appellant would have the effect of allowing the exception to swallow the rule.

## POST–MIRANDA RIGHTS
## STATEMENTS

The second issue is whether the trial court erred in admitting appellant's statements following Officer Richardson's reading of *Miranda* rights. Appellant contends that the post-Miranda rights statements were coerced and connected to the pre-Miranda rights statements because once the "cat was out of the bag," appellant could not stop making statements. We disagree.

Where a defendant's initial statements are rendered inadmissible exclusively because he was not advised of his *Miranda* rights, and circumstances indicate that subsequent statements given after *Miranda* rights were otherwise voluntary, the subsequent statements are admissible. *State v. Montes*, 136 Ariz. 491, 667 P.2d 191 (1983). In *Montes*, prior to giving *Miranda* rights, the detective told the defendant that his co-defendant had implicated him, and showed the defendant a photograph of the murder victim's vehicle. The defendant identified the victim's vehicle,

**20**

but denied knowledge of the murder. The officer then gave the defendant *Miranda* rights, after which the defendant confessed to the crime. The defendant argued that the confession given after the rights was tainted by the statement he made prior thereto, and was therefore involuntary. 136 Ariz. at 496, 667 P.2d at 196. The court found that there was nothing inherently coercive about the interview before or after the rights were given, and therefore concluded that having received the rights, the defendant "did not then feel compelled to tell the rest of his story." *Id.* The court noted that only the one officer and the defendant were present, that there was no evidence of abuse or threats, and that the interviews were not lengthy. 136 Ariz. at 496–497, 667 P.2d at 196–197.

■ The interviews and attendant circumstances in this case were similarly uncoercive. Only Detective Richardson and appellant were present during the interviews, and there is no evidence that appellant was abused in any way or induced by threats or promises. Both before and after being read his rights, appellant made statements which, at the time, were exculpatory but which later became inculpatory because they did not coincide with the facts or his later statements and testimony.

A recent United States Supreme Court case lends further support to the result reached by the trial court. In *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Court held that a suspect who has responded to unwarned yet uncoercive questioning is not thereby disallowed from waiving his rights and confessing after being given the requisite *Miranda* rights. 470 U.S. at 318, 105 S.Ct. at 1298, 84 L.Ed.2d at 238. In so holding, the Court clearly rejected the theories relied upon by appellant in this case: that such post-*Miranda* rights statements were "fruit of the poisonous tree" and that they were involuntary because "the cat was out of the bag." Appellant contends that *Elstad* is distinguishable because the pre-*Miranda* rights statements in *Elstad* were made by the defendant in his home, and the officer may have been confused as to

whether that conversation constituted custodial interrogation. We reject this argument because we do not find the factual distinctions in *Elstad* to have any bearing on the applicability of the Court's holding that post-*Miranda* rights statements are not tainted by pre-*Miranda* rights statements made in response to uncoercive questioning. Having determined that Officer Richardson's questioning of appellant both before and after giving *Miranda* rights was uncoercive, we conclude that there was no error in admitting appellant's post-*Miranda* rights statements.

## OFFER TO PLEAD GUILTY

For his third issue, appellant argues that the following statements made during his third meeting with Officer Richardson were inadmissible on the ground that they constituted plea negotiations: "I want to plead guilty. I was in the wrong. I think you found enough evidence. Leave Sandra out of it." Appellant contends that pursuant to Rule 410, Arizona Rules of Evidence, and Rule 17.4(f), Arizona Rules of Criminal Procedure, those statements were a "plea offer" and therefore should have been suppressed. We disagree.

Rule 410, Arizona Rules of Evidence, provides that:

... evidence of ... an offer to plead guilty, nolo contendere or no contest to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers is not admissible against the person who made the plea or offer in any civil or criminal action or administrative proceeding.

Rule 17.4(f), Arizona Rules of Criminal Procedure, provides that:

... if no [plea] agreement is reached, or if the agreement is revoked, rejected by the court, or withdrawn or if the judgment is later vacated or reversed, neither the plea discussion nor any resulting agreement, plea or judgment, nor statements made at a hearing on the plea, shall be admissible against the defendant in any criminal or civil action or administative proceeding.

■ In *State v. Sweet*, 143 Ariz. 289, 693 P.2d 944 (App.1984), *vacated in other part*, 143 Ariz. 266, 693 P.2d 921 (1985), Division 2 of this court specifically rejected the argument that Rule 410 is applicable to such statements. The defendant in that case made statements to the police about a robbery that occurred at his house, ownership of the seized contraband, and the possibility of making a deal with the authorities whereby he could work off his charge by leading the police to a drug supplier. 143 Ariz. at 294, 693 P.2d at 949. On appeal, he argued that the statements were erroneously admitted because they were made in connection with plea negotiations. The court concluded that the statements were not made in connection with any plea agreements, and did not fall under Rule 410. *Id.* The statements made in this case are the same type as those made in *Sweet.* Both defendants apparently admitted their guilt to police officers in the hope of winning some concessions, and both were told that only the prosecutor could negotiate a deal. The statements made by appellant were, like the statements in *Sweet*, not made in connection with any plea agreement. Thus, they were not excludable under Rule 410, or under Rule 17.4(f).

Appellant further argues that the statements were part of plea negotiations because he was attempting to act *pro se.* There is no merit to this argument. The public defender had been appointed for appellant on June 8, 1985. The statements at issue were made on June 10, 1985. Thus, appellant, at the time the statements were made, was represented by counsel, and he is not entitled to dual representation. *State v. Stone*, 122 Ariz. 304, 594 P.2d 558 (App.1979). Appellant could not, on his own, dismiss counsel and represent himself without the trial court finding that he was knowingly waiving the right to counsel. *See State v. Raseley*, 148 Ariz. 458, 715 P.2d 314 (App.1986). Therefore, we conclude that the trial court did not err in admitting the statements into evidence.

## CLOSING ARGUMENT

The fourth issue concerns the prosecutor's closing argument. Appellant contends that the prosecutor committed fundamental error by stating that appellant waited five months before mentioning his consent defense. The challenged statements are:

He told you, interestingly enough, something that you must keep in mind: That he has had access to the victim's tape recorded interview. He sat through and listened through everyone's testimony. He had five months before he ever told you anything about this alternate bondage defense. He can't claim I.D. as an issue, because the police got him just like that.

They drew down on him, they pulled him out of the truck within minutes of when Sirena called. I.D. went out the window. Plan of attack here, my defense, Sirena is kinky and she agreed to do this.

Then the defendant started getting this—all this evidence, so that now after five months, now it's consent and she consented to bondage.

Appellant argues that these statements constituted improper comment on appellant's post-arrest silence for impeachment purposes. We reject this argument.

■ Prosecutorial use of a defendant's post-arrest silence for impeachment purposes can be fundamental error. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, when a defendant has not remained silent, and has made statements at trial which are inconsistent with his earlier testimony, his credibility is clearly in question. *State v. Vaughn*, 147 Ariz. 28, 30, 708 P.2d 453, 455 (1985). If a defendant, after receiving *Miranda* rights, voluntarily gives a statement, that statement may be used to impeach his credibility if he testifies at trial to a directly exculpatory version of the facts. *Anderson v. Charles*, 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). We note that appellant did testify on his own behalf at trial.

■ Appellant was not silent after his arrest. There were three separate groups of admissible statements in addition to his

trial testimony. Appellant contends that he remained silent after the third statement on June 10, 1985, until trial, and that the comment was impermissibly directed to that silence. For the following reasons, we disagree.

First, we do not believe that the five month hiatus of statements between June 10 and the trial constitutes an invocation of the right to silence. In *State v. Vaughn, supra,* the defendant also told three different versions of the events to the police and a fourth version at trial. The court rejected the claim that the prosecutor improperly commented on the defendant's post-arrest silence, reasoning: "Since defendant did not invoke his right to silence, he was not impeached by it." 147 Ariz. at 30, 708 P.2d at 455. In view of appellant's prior inconsistent statements here, we cannot conclude that he invoked his right to silence.

Secondly, the prosecutor was not attacking appellant's silence, but rather his fourth version of the events which he testified to at trial. He was merely commenting on how the fourth story attempted to include all the facts which emerged during the discovery process. The prosecutor's tactic, in view of appellant's first three statements, was a permissible attack on appellant's testimony at trial, not a comment on any "silence" on appellant's part. *See Anderson v. Charles, supra.* Therefore, we find no error.

## CONSECUTIVE SENTENCES

■ The last three issues raised concern the sentences imposed upon appellant. First, appellant argues that the trial court erred in imposing consecutive sentences for "spree offenses," citing *State v. Perkins,* 144 Ariz. 591, 699 P.2d 364 (1985). We disagree. In the recent case of *State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987), the Arizona Supreme Court expressly overruled *Perkins* to the extent it suggests that A.R.S. § 13–604(H) in any way limits a judge's ability to impose consecutive sentences for crimes committed on the same occasion. 152 Ariz. at 288, 731 P.2d at 1232. *See also State v. Griffin,* 148 Ariz. 82, 713 P.2d 283 (1986) and *State v. Devine,*

150 Ariz. 507, 724 P.2d 593 (App.1986) (consecutive sentences may be imposed for convictions based on separate and distinct acts of sexual assault, even though the separate acts occur one after another within a relatively short time span). This construction makes practical sense. Otherwise, the defendant would not be punished for the subsequent acts, each of which is a separate crime, but only for the first act; and there would be no deterrent to keep a defendant from committing multiple crimes on the same occasion. *See State v. Nelson,* 131 Ariz. 150, 152, 639 P.2d 340, 342 (App. 1981). The trial court complied with A.R.S. § 13–708 by stating that consecutive sentences were being imposed because appellant was a dangerous person and should be removed from society for the maximum time possible. Thus, there was no error in imposing consecutive sentences.

## AGGRAVATED SENTENCES

Next, appellant argues that the trial court erred in imposing aggravated sentences on each count. Specifically, he challenges the propriety of two aggravating circumstances found by the court: (1) the fact that appellant committed other crimes during the commission of the charged offenses, and (2) the victim's age of sixteen. Appellant contends that the first is too vague to qualify as an aggravating circumstance, and that the second is improper because the victim was sexually experienced. We reject these arguments for the following reasons.

■ In determining a defendant's sentence, the trial court may consider, in addition to specific aggravating circumstances set forth in A.R.S. § 13–702(D), "Any other factors which the court may deem appropriate to the ends of justice." A.R.S. § 13–702(D)(13). Prior incidents which do not result in convictions may be used at sentencing to aggravate the term. *State v. Cawley,* 133 Ariz. 27, 648 P.2d 142 (App. 1982).

The record reflects that appellant did commit other crimes during his attack on the victim for which he was not charged. The victim testified that appellant commit-

ted ten sexual assaults consisting of six acts of vaginal intercourse, two acts of anal intercourse, and two acts of oral sexual contact. Appellant was only charged with and convicted of three counts of sexual assault. We see no reason why the other crimes testified to at trial by the victim may not be used to aggravate the sentence. Certainly the number and types of additional acts inflicted by appellant upon the victim is a reflection of the dangerousness of the appellant and the harm to the victim.

 As to the age of the victim, we find no abuse of discretion in using such age as an aggravating factor. A.R.S. § 13–702(D)(12) specifically lists as an aggravating circumstance the fact that the victim "is sixty-five or more years of age." We see no reason why the youth of the victim, although not specifically delineated in the statute, should be any less of an aggravating factor than the advanced age of a victim. As noted above, the trial court could properly consider the age of the victim under A.R.S. § 13–702(D)(13), which allows the court to consider any factors in aggravation which it may deem appropriate. Indeed, A.R.S. § 13–1405 specifically provides that sexual conduct with a minor, with or without her consent, is a crime. While the victim here, evidently, had seen more of life than most sixteen-year-olds, that fact should not preclude the use of her age to aggravate the sentence.

 We note that the trial court also found the aggravating factors of cruelty and emotional harm to the victim. These have not been contested by appellant. Even if an aggravating circumstance was improperly considered, elimination of one of several aggravating factors found by the trial court does not mandate a reversal to the trial court for resentencing. *State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984).

## CRUEL AND UNUSUAL PUNISHMENT

Finally, appellant argues that his sentences should be set aside because they are excessive and constitute cruel and unusual punishment. We reject this argument.

 When a sentence is within statutory limits, it will not be reduced on appeal unless, from the circumstances, it clearly appears that the trial court abused its discretion by showing arbitrariness or capriciousness, or by failing to conduct an adequate investigation into the facts relevant to sentencing. *E.g., State v. Walton*, 133 Ariz. 282, 295–296, 650 P.2d 1264, 1277–78 (App.1982).

We find no evidence that the trial court abused its discretion in determining the sentence in this case. As previously stated, the trial court was statutorily authorized to impose consecutive sentences. The court specifically stated its reasons for doing so. Additionally, there was no error in imposing aggravated sentences. A presentence report was prepared for the trial court, and appellant's counsel made a statement to the court at the time of sentencing. Pursuant to A.R.S. § 13–702(C), the trial court stated its reasons for imposing aggravated terms, and specifically found that the aggravating circumstances were not outweighed by mitigating circumstances.

 By way of comparison, we note the sentences imposed in *State v. Van Alcorn*, 136 Ariz. 215, 665 P.2d 97 (App.1983). There, the defendant was convicted of kidnapping, sexual assault, and aggravated assault. He received consecutive sentences of 15, 21 and 10 years respectively. Division Two of this court rejected the defendant's argument that the consecutive sentences were inappropriate and an abuse of discretion. In this case appellant received consecutive terms of 15, 21, 21, 21, and 21 years for aggravated assault, kidnapping, and three counts of sexual assault. As in *Van Alcorn*, the trial court made all sentences consecutive. The difference in the total number of consecutive sentences is due to the fact that appellant in the present case was convicted of two more counts of sexual assault than the defendant in *Van Alcorn*. *See also State v. Nelson, supra* (defendant received a total of 126 years for two counts of kidnapping and 14 counts of sexual assault on two victims); *State v.*

**24**

*Robinson*, 153 Ariz. 188, 735 P.2d 798 (App.1986) (upholding imposition of four maximum, consecutive sentences of 14 years). Accordingly, we do not deem the sentences in this case to be excessive.

 As to appellant's contention that his sentence constitutes cruel and unusual punishment, we cannot agree. In determining whether a sentence is cruel and unusual, the following factors are generally considered: (1) the gravity of the offense; (2) the harshness of the penalty; (3) the sentence imposed on similarly situated defendants in the same jurisdiction; and (4) the sentences imposed for commission of the same crime in other jurisdictions. *State v. Cocio*, 147 Ariz. 277, 282, 709 P.2d 1336, 1341 (1985). The offenses in this case were sufficiently grave to warrant a harsh penalty. The acts were intentional. The victim was forced to submit to ten sexual acts, while bound. Most of the time, she was also gagged. Appellant threatened her life with two knives, one of which was sharp enough that appellant himself suffered a cut which bled profusely, as he cut off the victim's brassiere and blouse. Although the victim did not sustain any permanent physical injury, she testified to the extreme discomfort she experienced while she was bound and gagged and her problems following the incident. The victim was the helpless object of defendant's depredations for a considerable period of time, during which time she did not know if she would be killed at the end of the ordeal.

Additionally, the pre-sentence report discloses that appellant had a prior conviction for kidnapping and robbery, and had twice escaped from the Michigan Department of Corrections. As noted above, appellant's sentence is not disproportionate to those received by similarly situated defendants in Arizona. *See, e.g., State v. Nelson, supra.* Nor is the sentence disproportionate to those imposed in other states. *See, e.g., White v. State*, 263 Ind. 302, 330 N.E.2d 84 (1975) (imposition of consecutive sentences of life imprisonment and 20 years for offenses of kidnapping and rape while armed with a deadly weapon did not constitute cruel and unusual punishment); *Martin v. Commonwealth*, 493 S.W.2d 714 (Ky.1973) (imposition of sentence of life imprisonment for rape did not constitute cruel and unusual punishment); *State v. Agee*, 474 S.W.2d 817 (Mo.1971) (aggravated sentence of 99 years for statutory rape of 12-year-old girl did not constitute cruel and unusual punishment); *State v. Williams*, 295 N.C. 655, 249 S.E.2d 709 (1978) (approving imposition of consecutive sentences of life imprisonment for rape, kidnapping, and armed robbery, 40 years for armed robbery, and 20 years for felonious assault); *State v. Brown*, 17 Wash.App. 587, 564 P.2d 342 (1977) (approving imposition of consecutive sentences of 35, 35, and 10 years for convictions of rape, rape, and assault, respectively).

Pursuant to A.R.S. § 13–4035, we have also searched the record for fundamental error, and have found none. For the foregoing reasons, the convictions and sentences are affirmed.

BROOKS and FROEB, JJ., concur.