780 P.2d 1067

**STATE of Arizona,
Respondent–Appellee,**

v.

**David Allen SHULER,
Petitioner–Appellant.**

**Nos. 1 CA–CR 11875, 1
CA–CR 88–257–PR.**

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 19, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for respondent-appellee.

John R. Hart, Yuma, for petitioner-appellant.

## OPINION

KLEINSCHMIDT, Judge.

The principal issue on appeal in this case concerns whether the trial court may properly consider prior arrests as an aggravating circumstance in determining a defendant's sentence. We hold that the court may not consider mere arrests which are unsupported by evidence of bad acts or illegal conduct. The record here reveals that most of the arrests considered by the trial court resulted in convictions and were therefore properly considered. We are convinced from our review of the entire record that even if the trial judge had drawn the distinction between mere arrests and convictions that he should have drawn, the sentence would not have been different. We therefore affirm.

The defendant, David Allen Shuler, was charged with possession of a dangerous drug and felony flight. He later pled guilty to felony flight, and was sentenced to the maximum term of two-and-one-half years' imprisonment. He appealed, and after the briefs were filed the appeal was stayed to allow the defendant to complete proceedings on his petition for post conviction relief. In that petition, he asserted that he had been denied his right to allocution and that his counsel had been ineffective for not asserting defendant's right to allocution. The trial court denied the petition without a hearing, and the defendant timely filed a petition for review, which has been consolidated with this appeal. We grant review of the petition for post conviction relief but deny relief, and otherwise affirm the judgment and conviction.

## FACTORS CONSIDERED BY THE · TRIAL COURT AT SENTENCING

■ At the time the defendant was sentenced, the trial judge said, "The reason for this [aggravated sentence] is that you have been granted leniency by the state, and also because you have an extensive *arrest record*. These are treated as aggravating factors." (Emphasis added.) The defendant argued that his past criminal record, which appeared in the presentence report, should not have been considered as an aggravating factor "since the record is old, he has paid his debts to society, and has in recent years stayed out of serious trouble." There is no merit to this claim. Under the relevant sentencing statute, the trial court may consider as an aggravating circumstance any "factor[ ] which the court may deem appropriate to the ends of justice." A.R.S. § 13–702(D)(13)(Supp.1988). "[T]he court should take into account both ... the past conduct and moral character of the defendant so that the punishment may fit the offense and the offender." *State v. Gray*, 122 Ariz. 445, 448, 595 P.2d 990, 993 (1979). Information in presentence reports taken from police records is generally admissible to show aggravating or mitigating circumstances. *State v. Marquez*, 127 Ariz. 3, 6, 617 P.2d 787, 790 (App.1980). It is within the trial court's discretion to consider the defendant's past criminal conduct, whenever it occurred.

The case, however, presents another question not initially raised by the defendant. After examining the record for fundamental error, we asked the parties to brief the question of whether the trial court improperly considered the defendant's prior *arrests* as an aggravating circumstance. They have now done so.

■ The trial court may consider a defendant's criminal character and history. *State v. Ellis*, 117 Ariz. 329, 334–35, 572 P.2d 791, 796–97 (1977). This is true even if the defendant's conduct has not resulted in a conviction. In *State v. Cawley*, 133 Ariz. 27, 29, 648 P.2d 142, 144 (App.1982), the trial court had before it evidence of the defendant's history of peculiar sexual behavior. We held that, "while none of these

prior incidents resulted in convictions, they can still properly be used in sentencing." *Id.* Similarly, in *State v. Stuck*, 154 Ariz. 16, 22, 739 P.2d 1333, 1339 (App.1987), the trial court had before it evidence that the defendant had committed a number of similar crimes prior to trial. Again we found that "prior incidents which do not result in convictions may be used at sentencing to aggravate the term." *Id.*

When, however, the trial court aggravates a sentence based on the mere report of an arrest, with no evidence of the underlying facts to demonstrate that a crime or some bad act was probably committed by the defendant, the trial court errs. "The fact of arrest or detention by the police does not establish that the suspect has committed a crime." *Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir.1987). In *Brothers*, the defendant contended that the trial court had improperly considered his "numerous 'contacts' with the law—all falling short of convictions—as aggravating circumstances." The Ninth Circuit Court of Appeals held that:

> The court may not impose a more severe punishment simply because the defendant was in some way entangled with the police. Of course, an arrest or detention that does not result in a conviction may nevertheless reflect wrongful conduct that the sentencing court may consider. What the court may not do, however, is to infer *wrongful conduct from the arrest or detention alone; it must look at the underlying facts.*

*Id.* (Emphasis added; citations omitted.)

■ Although we know of no Arizona case that contradicts this conclusion, in *State v. Dixon*, 21 Ariz.App. 517, 519, 521 P.2d 148, 150 (1974), Division Two of this court held that what may have been no more than a list of arrests taken from police records could be considered as an aggravating circumstance even though the arrests did not result in convictions. It is unclear from the decision in that case whether or not the trial court had the details of the incidents which led up to the defendant's contacts with the police. Two subsequent cases, *State v. Stanley*, 123

Ariz. 95, 597 P.2d 998 (App.1979) and *State v. Warren*, 124 Ariz. 396, 604 P.2d 660 (App.1979), cite *Dixon* with approval, although in both of them it appears that the sentencing courts probably had more information before them relating to prior bad acts than the mere report of an arrest.

In the past, we were willing to overlook an improperly considered aggravating circumstance if the remaining aggravating circumstances supported the sentence. *See, e.g., State v. Germain*, 150 Ariz. 287, 723 P.2d 105 (App.1986). A recent supreme court decision now calls that practice into question. In *State v. Ojeda*, 159 Ariz. 560, 562, 769 P.2d 1006, 1008 (1989), the court held that:

> [W]hen one or more, but not all, of the findings of probation violation are set aside on appeal, the order of revocation and the sentence should be set aside and the case remanded to the trial court for a new disposition hearing unless the record clearly shows the trial judge would have made the same disposition even without consideration of the violations set aside on appeal.

*Id.*

The *Ojeda* decision was based in part on the supreme court's view that, where it is unclear whether the sentencing court would have imposed the same sentence absent inappropriate factors, the case must be remanded for resentencing. In an attempt to analyze whether the improper consideration of prior *arrests* could have influenced the sentence imposed, we look at the defendant's history of contacts with the law.

The presentence report contained the following:

> 4/16/72—State Police Marshallton, Delaware, Breaking and Entering—Disposition unknown, possibly dismissed (according to the defendant).
>
> 4/17/72—New Castle Delaware Police Department—Resist Arrest—Disposition—Unknown (possibly dismissed).
>
> 3/25/73—Pikesville Maryland State Police, Flight Escape Fugitive (32) 4999 —Disposition—Unknown. (Arrest believed to be on a warrant).

> 3/30/73—New Castle Delaware State Police—Sale of Controlled Narcotic Substance Dep. to a Minor—Committed in default of $1,000.00 for preliminary hearing at Division of Adult Correction Smyrna, Delaware—charge Possession with Intent to Sell and Give to Minor Tuinalo.
>
> 10/5/73—New Castle Delaware Police Department—Burglary, Grand Larceny, Conspiracy—Disposition—Pay fine, court costs, restitution, 3 years probation on charge of Theft under $100.00.
>
> 2/13/74—New Castle Delaware Police Department—Theft Criminal Trespass 3rd Degree, Criminal Mischief, Terroristic Threat—Disposition—pay a fine of $100.00 on charge of Criminal Trespass 3rd Degree; Prison three years suspended on charge of Theft; Placed on probation for three years 9/13/74 to 9/22/77.
>
> 10/31/74—Wilmington Delaware State Police—Theft, Disposition—$20.00 fine, paid and released.
>
> 12/6/74—New Castle Delaware State Police—DC (Disorderly Conduct). Disposition—Unknown.
>
> 4/19/75—New Castle Delaware Police Department—Burglary 2nd Degree, Theft, Conspiracy 2nd Degree. Disposition—$2,000.00 unsecured bond on each charge; imprisoned two years, imprisonment suspended and placed on 2½ years probation for 2nd Degree Burglary, Theft, and 2nd Degree Conspiracy.
>
> 7/2/75—New Castle Police Department—Burglary 2nd Degree and Conspiracy 2nd Degree. Disposition—ISS 2 years, 2½ years on charge of Theft (Felony).
>
> 11/27/76—Wilmington Delaware State Police Troop 6—Driving Under the Influence of Alcohol. Disposition—60 days ISS; 6 months probation; pled guilty in Superior Court 3/11/77 to Driving Under Influence of Alcohol; Court of Prosecution fined $200.00 plus surcharge, 60 days jail from 3/11/77 to 5/10/77; imprisonment suspended and probation granted for 6 months beginning 3/11/77 until 9/10/77.
>
> 12/19/76—Philadelphia Pennsylvania Police Department—Possession of con-

trolled Substance—Received at Federal Prison (12/19/76).

12/11/77—Newark Delaware Police Department—Petty Theft. Disposition—Unknown.

5/10/78—Newark Delaware Police Department—Contempt of Court (5005)—Disposition: $10.20 + costs.

3/20/81—Yuma County Sheriff's Office—DWI/Driving on Suspended License. Disposition—one day jail—$190.50 for DWI and $112.00 fine, 6 months probation on revoked license.

12/12/78—Newark Delaware Police Department—Contempt of Court. Disposition: Unknown.

2/17/82—Newark Delaware Police Department—Disorderly Conduct, Criminal Mischief, Terroristic Threat, Assault, Resisting Arrest, Contempt of Court—Disposition: nol pros by city for all three charges. PG Fine $50.00, $5.00 contempt payment on charge of Assault; G.F. $50.00, $5.00, $8.50 contempt payment on charge of Resisting Arrest.

10/12/82—Newark Delaware County Police Department—Criminal Impersonation. Disposition: Fine $50.00, $5.00 contempt payment on charge of criminal impersonation.

Of these eighteen prior incidents, six appear to represent arrests only: 4/16/72, 4/17/72, 3/25/73, 12/6/74, 12/11/77, and 12/12/78. As to three of the incidents, the ultimate disposition is not discernable: 3/30/73, 12/19/76, and 12/17/82. All of the remaining incidents resulted in convictions. Many of these convictions were of a serious nature and include sale of a controlled narcotic substance to a minor, 3/30/73; burglary, grand larceny, and conspiracy, 10/5/73; theft, 2/13/74; burglary, 4/19/75; driving under the influence of alcohol, 11/27/76; and driving while intoxicated, 3/20/81.

Here, the record clearly indicates that there were a number of arrests which resulted in convictions. Wrongful conduct

may be inferred from an arrest and conviction. Indeed, A.R.S. § 13–702(D)(11) mandates that felony convictions that are less than ten years old must be considered as an aggravating factor at sentencing. Even if the mere arrests had not been considered, it seems certain that the trial court would have imposed the same sentence that it did. This is particularly true because the judge appears to have been referring to the defendant's "arrest record" as including his convictions. In view of this, we do not believe it necessary to remand the case for resentencing. If the defendant believes otherwise, he may ask the trial judge to consider the precise point by filing a new petition for post conviction relief.[1]

■ The other aggravating factor the trial judge took into account, the fact that the state dismissed the charge of possession of a dangerous drug, was properly considered. The law is clear that the sentencing court may consider other crimes that the defendant committed on the same occasion, even if he is not charged with them. *See, e.g., State v. Ethington,* 121 Ariz. 572, 592 P.2d 768 (1979); *Stuck,* 154 Ariz. at 22, 739 P.2d at 1339; *Walker v. Endell,* 850 F.2d 470 (9th Cir.1987). Assuming that there are background facts to support the charges filed, it is permissible for a sentencing court to consider what the defendant was charged with, as against what he pled guilty to, in order to ameliorate the distorting effects sometimes caused by plea bargaining. *See United States v. Correa–Vargas,* 860 F.2d 35 (2d Cir.1988).

## FAILURE TO ADVISE OF RIGHT TO SELF–REPRESENTATION

■ The defendant argues that under the rules which prescribe the procedure for initial appearances, he was entitled to be advised of his right to waive representation. Rules 4.2(a)(3) and 6.1(c), Arizona Rules of Criminal Procedure, 17 A.R.S.

---

1. Persons convicted and incarcerated who believe that they received an enhanced sentence because the court considered mere arrests should not appeal on that basis without first making application to the trial court under Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S. for a determination of whether, in fact, the sentence was affected by this improper consideration. *Cf. State v. Crowder,* 155 Ariz. 477, 747 P.2d 1176 (1987).

The defendant concedes that the record fails to indicate whether or not he ever received notice of this right. He contends, however, that during arraignment he was forced to accept representation, and that this constitutes reversible error.

The record reveals that the defendant failed to appear at his first arraignment scheduled for April 29, 1987. The court ordered the defendant released on bond, and continued the arraignment until May 1. At that time, the following exchange occurred:

THE COURT: All right. Do you have a lawyer?

THE DEFENDANT: No, sir.

THE COURT: Do you wish to have a lawyer?

THE DEFENDANT: Well, I was going to see the arraignment and see if all the charges were going to stick, then I was going to get a lawyer if they are going to try to push this thing.

THE COURT: Well, now, what makes you think that anybody would drop them right now after having a grand jury indict you?

THE DEFENDANT: Well, because I didn't do what it says I did.

THE COURT: That's for you and your lawyer to take up with the County Attorney. How much time do you need to get a lawyer?

THE DEFENDANT: I don't know. A couple of weeks. A week or two.

THE COURT: You either can get a lawyer or you can't. Which is it?

THE DEFENDANT: Well, in a week or two I could probably save up enough money, Your Honor, to get a lawyer.

THE COURT: Well, you better talk to a lawyer between now and Monday—or I will give you until Wednesday—and find out what you can do and what you can't do. We can't wait two weeks just for you to raise some money.

So your arraignment is also continued to next Wednesday, May 6th, at 8:30.

THE DEFENDANT: Fine.

Then, on May 6, the defendant again appeared *in propria persona.*

THE COURT: 13920, State of Arizona versus David Allen Shuler. Mr. Shuler, do you have a lawyer?

THE DEFENDANT: I talked to Mr. Davis earlier in the week and he advised me to plead not guilty and referred me to a lawyer.

THE COURT: I'm not going to accept your plea of guilty without your lawyer.

THE DEFENDANT: Not guilty.

THE COURT: Or not guilty. Either one. Who is your lawyer?

THE DEFENDANT: Well, I went and saw Mr. Davis earlier this week. I don't remember his first name.

THE COURT: Where is he?

THE DEFENDANT: He's right around the corner.

THE COURT: I don't think I know a Mr. Davis. Does anyone else know a lawyer by the name of Davis?

THE DEFENDANT: Well, Your Honor, I went there yesterday. I'm not sure that's his name. He said he only handles corporate law.

THE COURT: Well, it looks like you're picking the wrong—well, I don't know. Did he advise you to see a lawyer to handle criminal matters?

THE DEFENDANT: He said he would contact a lawyer and get back with me.

THE COURT: You know this case has been continued from May 1st to let you get a lawyer. You just talked to one yesterday?

THE DEFENDANT: The day before yesterday, sir.

THE COURT: It's ordered that the defendant be jailed until he has a lawyer and can come in for arraignment. Arraignment is set for Friday, May 8th at 8:30. You are remanded to the custody of the Sheriff.

On May 7, the defendant appeared with counsel and entered a plea. Since we do not have a record of the initial appearance, we cannot be certain that the defendant was never told that he had the right to represent himself. We will assume that the court properly performed its duties in this respect. *See State v. Forteson,* 8 Ariz. App. 468, 447 P.2d 560 (1968). In any

event, the defendant does not tell us how the failure to advise him that he could represent himself resulted in any prejudice to his case. We will not speculate that it did.

We do observe, however, that the trial court acted improperly in refusing to accept the defendant's plea of not guilty and then summarily jailing him until he hired a lawyer. Even assuming that the defendant was being obstructive in refusing to hire counsel and simultaneously saying that he wanted to do so, the dictates of due process require that such matters be handled otherwise. There was, however, no reversible error in this irregularity.

## RIGHT TO ALLOCUTION

The last issue raised by the defendant relates to an alleged deprivation of his right to allocution at sentencing. The defendant urges that, although he was given his right to allocution at the presentence hearing on August 5, 1987, Rule 26.10, Arizona Rules of Criminal Procedure, 17 A.R.S., requires that he be given this right at the actual sentencing, which occurred on August 7, 1987.

The right of allocution is the defendant's personal statement to the trial court prior to sentencing. *State v. Dixon*, 127 Ariz. 554, 622 P.2d 501 (App.1980). This defendant made a statement at the end of the presentence hearing. At the end of his statement, he said, "that's about all I have to say." At the sentencing, two days later, the court began immediately with the pronouncement of sentence. While it would have been better practice to ask the defendant if he had anything more to say just before sentencing, no reversible error was committed. We find it very unlikely under the circumstances that the court did not consider the defendant's statement. In fact, in denying the petition for post-conviction relief, the court specifically stated, "This court has been guided in sentencing defendants by the presentence report, the comments of the state, and by the statements of defendants and their counsel."

The case cited by the defendant, *State v. Nelson*, 122 Ariz. 1, 592 P.2d 1267 (1979), is readily distinguishable. There, the substituted judge made clear to the defendant that he would *not* consider what the defendant said, but rather would sentence him based on the original judge's notes and the presentence report. The Arizona Supreme Court held the defendant had a right to make a statement and have it considered by the court before sentencing. *Id.* That occurred here.

Moreover, to achieve a resentencing because of an error regarding the defendant's right to allocution, the defendant must show that he would have added something of significance to the record if he had been given his full right to allocution. *E.g., State v. Starr*, 110 Ariz. 580, 521 P.2d 1126 (1974). Here the defendant did address the court and finished with, "that's about all I have to say." Defendant has not indicated what he would have said to the court on August 7, 1987, that could have affected the sentence he received. Because there was no prejudice to defendant's substantial rights, resentencing is unnecessary. *State v. Maddasion*, 24 Ariz. App. 492, 539 P.2d 966 (1975), *aff'd* 130 Ariz. 306, 636 P.2d 84 (1981). Furthermore, because there was no prejudice, there was no ineffective assistance of counsel at sentencing. *E.g., State v. Gerlaugh*, 144 Ariz. 449, 698 P.2d 694 (1985).

Pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error and have found none. For the above reasons, the conviction and sentence are affirmed.

GRANT, C.J., and FIDEL, J., concur.