NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

EDUARDO SOTELO-NAVA, *Appellant*.

No. 1 CA-CR 17-0277
FILED 2-22-2018

---

Appeal from the Superior Court in Yavapai County
No.  P1300CR201400055
The Honorable Jennifer B. Campbell, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Craig Williams Attorney at Law PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Patricia A. Orozco[1] joined.

---

**B R O W N**, Judge:

¶1        Eduardo Sotelo-Nava appeals his convictions and sentences for sale or transport of a dangerous drug, a class 2 felony, and possession or use of drug paraphernalia, a class 6 felony.  He argues the prosecutor engaged in misconduct and the superior court failed to timely consider his motion for judgment of acquittal.  Sotelo-Nava also asserts the court interfered with his right to remain silent and improperly limited the scope of his testimony.  Finding no reversible error, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

¶2        Deputy Winfrey conducted a traffic stop on the pickup Sotelo-Nava was driving on I-17.  Sotelo-Nava explained he had borrowed the pickup from a friend—the vehicle's registered owner—in Texas, driven it to Phoenix for a two-week holiday to visit family, and was presently returning home to Texas.[3]  The pickup bore Mississippi license plates.

¶3        After noticing several details of Sotelo-Nava's unusual behavior indicating possible involvement in criminal activity, Winfrey requested permission to search the vehicle.  Sotelo-Nava verbally assented and signed a consent-to-search form.  Winfrey and Sergeant Dartt subsequently located 11 one-pound bags of methamphetamine in hidden compartments in the pickup's rear passenger area.  When Winfrey informed Sotelo-Nava of the drugs that were found, Sotelo-Nava did not

---

[1]        The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)

[3]        The personal identification information that Winfrey inspected listed a Phoenix address for Sotelo-Nava.

visibly react, nor did he deny knowing the drugs were there. Winfrey arrested Sotelo-Nava and transported him to the county sheriff's office.

¶4            After two hung juries resulted in mistrials, a third jury found Sotelo-Nava guilty of sale or transport of a dangerous drug (Count 1) and possession or use of drug paraphernalia (Count 2). He was later sentenced to concurrent prison terms of eight years on Count 1 and one year for Count 2. The superior court then permitted Sotelo-Nava to file this delayed appeal.

## DISCUSSION

### A.      Prosecutorial Misconduct

¶5            Sotelo-Nava testified he was unaware of the drugs in the pickup. He explained that, during the month before the incident, he became acquainted in Phoenix with an individual, "Juan," who had friends in Texas willing to temporarily employ Sotelo-Nava as a demolition worker, and Juan loaned Sotelo-Nava a vehicle to drive from Phoenix to Texas. Sotelo-Nava added that he had lived in Phoenix for approximately 11 years and was out of work when he met Juan.

¶6            During cross-examination, the prosecutor asked Sotelo-Nava whether this was "the very first time any of us are hearing about this story about Juan?" Sotelo-Nava answered affirmatively. Sotelo-Nava contends the question amounted to misconduct because the prosecutor knew that, based on Sotelo-Nava's similar testimony in the two previous trials, Sotelo-Nava had mentioned Juan before.

¶7            A conviction will be reversed for prosecutorial misconduct "if (1) the prosecutor committed misconduct and (2) a reasonable likelihood exists that the prosecutor's misconduct could have affected the verdict." *State v. Benson*, 232 Ariz. 452, 463, ¶ 40 (2013). The defendant must prove "the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *State v. Morris*, 215 Ariz. 324, 335, ¶ 46 (2007) (internal quotations and citation omitted).

¶8            Sotelo-Nava did not object to the prosecutor's question at trial; thus, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005) (explaining that failure to object to alleged trial error results in fundamental error review). "Accordingly, [Sotelo-Nava] bears

the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. James*, 231 Ariz. 490, 493, ¶ 11 (App. 2013) (citations and internal quotation marks omitted). "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error." *State v. Lavers*, 168 Ariz. 376, 385 (1991).

¶9        Properly construing the record, the prosecutor's reference to "us" in "[t]his is the first time any of us are hearing about Juan?" was not improper. From the perspective of the jury at the third trial, this was the first time Sotelo-Nava raised the "Juan story." No error or misconduct occurred. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.").

¶10        On direct examination, Sotelo-Nava testified he did not inform Winfrey about Juan. On cross-examination, the prosecutor asked Sotelo-Nava whether, while he was at the police station after the traffic stop, he had the opportunity to speak with Deputy Lopez, who spoke Spanish fluently. Sotelo-Nava replied, without objection, "[y]es[,]" and he affirmed that he declined to speak with Lopez. Immediately after Sotelo-Nava affirmed "this is the first time we are hearing about Juan," the prosecutor asked, "[d]id you ever describe Juan to law enforcement?" Again, without objection, Sotelo-Nava answered, "[n]o."

¶11        Sotelo-Nava contends the prosecutor's questioning regarding his refusal to speak with Deputy Lopez amounted to misconduct that elicited "an unconstitutional infringement on [Sotelo-Nava's] right to remain silent[.]" Based on the lack of objection at trial, we review for fundamental error.

¶12        Under the Fifth Amendment and as a matter of due process, a person in police custody has the right to remain silent in response to interrogation, and, at trial, the State generally cannot refer to the defendant's decision to do so. *Doyle v. Ohio*, 426 U.S. 610, 617–20 (1976); *Miranda v. Arizona*, 384 U.S. 436, 474, 478-79 (1966); *State v. VanWinkle*, 229 Ariz. 233, 236, ¶ 14 (2012); *State v. Smith*, 193 Ariz. 452, 457, ¶ 18 (1999). One who speaks voluntarily after receiving *Miranda* warnings, however, has not remained silent, *Anderson v. Charles*, 447 U.S. 404, 408 (1980); a prosecutor may, therefore, discuss statements a defendant has voluntarily made without commenting on the accused's right to remain silent. *See State v.*

*Raffaele*, 113 Ariz. 259, 263 (1976); *see also Anderson*, 447 U.S. at 409 (concluding a prosecutor may demonstrate inconsistencies between descriptions of an event that "involve 'silence' insofar as [each] omits facts included in the other version"). As a corollary, a prosecutor may impeach a defendant who has made "new exculpatory statements at trial" with his earlier, voluntary statements made to police officers. *State v. Tuzon*, 118 Ariz. 205, 207 (1978).

**¶13** Sotelo-Nava's apparent claim of a Fifth and Fourteenth Amendment violation fails. Significantly, our review is limited by the absence in the record of opening statements and closing arguments at trial. Absent such transcripts, we cannot determine how the prosecutor, in front of the jury, actually commented on Sotelo-Nava's testimony. Also, Sotelo-Nava voluntarily spoke with Deputy Winfrey during the traffic stop, and Sotelo-Nava's "Juan story" presented at trial was inconsistent with his pre-arrest explanations to Winfrey regarding Sotelo-Nava's reason for driving to Texas and the circumstances of his authorization to be driving another person's vehicle. Finally, by testifying that he never had the opportunity to explain the "Juan story" to law enforcement, Sotelo-Nava opened the door to the prosecutor asking Sotelo-Nava if indeed he did have such an opportunity in the presence of Deputy Lopez, a Spanish speaker.[4] Thus, considering these circumstances, the prosecutor's questioning can reasonably be construed as a permissible attack on Sotelo-Nava's trial testimony, not as an improper comment on his "silence" during police questioning. *See State v. Stuck*, 154 Ariz. 16, 22 (App. 1987).

**¶14** On this record, we cannot find fundamental, prejudicial error occurred when the prosecutor elicited testimony about Sotelo-Nava's failure to make the exculpatory statements regarding Juan until trial. *See State v. Zuck*, 134 Ariz. 509, 513 (1982) ("Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court.").

## B. Superior Court's Deferred Ruling on Rule 20 Motion

**¶15** At the conclusion of the State's case-in-chief, the superior court proposed addressing Sotelo-Nava's Arizona Rule of Criminal

---

[4] The superior court found that Sotelo-Nava opened the door to the prosecution asking him about whether he had an opportunity to mention Juan after being arrested because, on direct, Sotelo-Nava claimed he was not able to speak with the police.

Procedure (Rule) 20 motion[5] at the end of the day, adding, "I will reserve any ruling and not consider any evidence [Sotelo-Nava] put[s] on between now and then." Sotelo-Nava agreed to the court's request and proceeded to testify. After the jury left for the evening break, the court asked the parties whether there was anything to "reduce to the record." Counsel for Sotelo-Nava responded "no" and the Rule 20 motion was not addressed.

¶16 The next day, after Sotelo-Nava rested, the court affirmed that the State did not have rebuttal evidence and informed the parties: "I remember we had forgotten [the Rule 20 motion]. So what we're going to do is instruct [the jury] and - - final instructions, if we can do any closings, but when we get to a brief spot, we'll do the Rule 20 motion." Defense counsel agreed with the court's stated approach. After instructions and closing arguments later that morning, the jury began deliberations and the court recessed for lunch. The court informed the parties that when proceedings resumed that afternoon, "[w]e're going to do the Rule 20 motion[.]" By the time court reconvened, the jury had reached a verdict. The parties immediately argued their respective positions on the Rule 20 motion, and the court denied it. The jury then returned to the courtroom and delivered the verdicts.

¶17 Sotelo-Nava argues the superior court committed fundamental error by not addressing and ruling on the Rule 20 motion at the close of the State's case. *See* Ariz. R. Crim. P. 20(a) cmt. ("The rule requires that the decision on [a Rule 20] motion be made with all possible speed after the state has rested its case.").[6] Sotelo-Nava does not contend the court's ruling was based on insubstantial evidence. *See State v. Nunez*, 167 Ariz. 272, 278 (1991) ("A judgment of acquittal is appropriate when 'no substantial evidence [exists] to warrant a conviction.'" (quoting *State v. Clabourne*, 142 Ariz. 335, 345 (1984))); *see also* Ariz. R. Crim. P. 20(a).

¶18 In denying the Rule 20 motion, the court stated:

---

[5] We cite the Arizona Rules of Criminal Procedure in effect at the time of Sotelo-Nava's trial.

[6] According to Sotelo-Nava, by addressing the Rule 20 motion at the end of trial, the court interfered with his right not to testify. Sotelo-Nava makes this assertion in summary fashion, and he fails to support it with meaningful argument. As a result, we do not address this argument. *See State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001) (finding issue waived because defendant failed to develop argument in his brief).

Based on the presentation of evidence during the State's case in chief, what we have is evidence of methamphetamine obtained in two hidden compartments, total of 11 pounds of methamphetamine.

Parties have stipulated that the methamphetamine was in fact a dangerous drug, methamphetamine. The defendant was the sole occupant of the vehicle, while not the owner of the vehicle.

The single issue in this trial has been knowledge. Did the defendant know the methamphetamine was there? Circumstantial evidence is [the] only evidence we have leading the defendant to the methamphetamine.

When we look at [the] circumstantial evidence, I do find it is substantial evidence to warrant a conviction. So at this time I'm going to deny the Rule 20 motion.

¶19 Although Sotelo-Nava correctly notes that our supreme court has recognized "[t]here is precedent for holding . . . the reservation of a ruling on a motion for directed verdict made at the close of the State's case is reversible error[,]" *State v. Villegas*, 101 Ariz. 465, 467 (1966), Sotelo-Nava cannot establish prejudice. He points to no evidence referenced in the superior court's ruling that was based only on his testimony; rather, the court based its decision on the evidence the State presented before Sotelo-Nava testified. As the court noted, the sole issue at trial was Sotelo-Nava's knowledge of the drugs in the vehicle. Based on the State's uncontested evidence that Sotelo-Nava was the driver and sole occupant of a vehicle containing a large amount of drugs, his knowledge of the drugs' presence could be properly inferred. *See State v. Teagle*, 217 Ariz. 17, 28, ¶ 44 (App. 2007) ("A jury may properly infer that a driver and sole occupant of a vehicle containing a large amount of drugs was aware that the drugs were in the vehicle."). Thus, Sotelo-Nava has not established that the court would have granted the Rule 20 motion if it had been addressed at the close of the State's case. *See State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) ("[A defendant] must affirmatively 'prove prejudice' and may not rely upon 'speculation' to carry his burden [of establishing reversible fundamental error]."). Absent prejudice, no reversible error occurred.

## C. Limitations on Sotelo-Nava's Testimony

¶20 Sotelo-Nava asserts the superior court deprived him of a fair trial by improperly limiting his testimony. He points to a number of

instances during his cross-examination where the court admonished him to "answer the question . . . being asked" and to answer "yes or no" questions appropriately and without further explanation. Sotelo-Nava also argues the court improperly limited his redirect testimony to "very short explanations" of "some of the items found in the tool . . . bag[.]" Because Appellant did not object to these alleged errors at trial, we review for fundamental error only. *See Henderson*, 210 Ariz. at 567, ¶ 19.

¶21 The superior court did not deprive Sotelo-Nava of a fair trial. Whatever information Sotelo-Nava believed was improperly withheld from the jury during his cross-examination could have been presented during his redirect testimony.

¶22 Regarding the purported limitation of his redirect testimony, Sotelo-Nava advised the court he intended "to go into more detail [about] some of the items that were found in the . . . tool bag . . . [and] how these tools are used in demolition[.]" The court permitted defense counsel to question Sotelo-Nava about the tools, but requested brief rather than in-depth descriptions about how each tool is used in demolition. Defense counsel then agreed not to "[go] through all the tools." Given this exchange, Sotelo-Nava has failed to establish that any error occurred, much less fundamental error.

## CONCLUSION

¶23 Based on the foregoing, we affirm Sotelo-Nava's convictions and sentences. We decline Sotelo-Nava's request to independently search the record for fundamental error. *See State v. Banicki*, 188 Ariz. 114, 118

(App. 1997) ("[B]because we are no longer obliged to search the record for fundamental error in non-Anders cases, we decline defendant's request.").



AMY M. WOOD • Clerk of the Court
FILED:  AA