**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roger REBBE, Defendant–Appellant.**

**No. 02–50073.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 2002.

Filed Dec. 24, 2002.

---

Dennis Fischer, Santa Monica, CA, for the defendant-appellant.

Susan De Witt, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee.

Before: D.W. NELSON, T.G. NELSON, Circuit Judges, and SCHWARZER,* District Judge.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern

D.W. NELSON, Circuit Judge.

Defendant–Appellant Roger Rebbe appeals his conviction for one count of conspiracy to commit offenses against the United States and eleven counts of aiding and assisting in the preparation of false tax returns, on the ground that the district court erred in admitting proffer statements he made to the Government during a plea negotiation. Rebbe's proffer statements were used by the Government to rebut evidence and arguments he presented at trial that were inconsistent with his proffer statements. We affirm.

## BACKGROUND

Rebbe, an accountant, assisted the Sherman Oaks Tree Service ("SOTS") and George Buskett, its chief executive officer, in evading workers' compensation insurance payments and federal payroll taxes. Rebbe was responsible for preparing all of SOTS' annual tax returns between 1994 and 1998. Rebbe advised Buskett to open two bank accounts, the "Green Account" and the "Blue Account." SOTS' income was deposited into the Blue Account. A portion of SOTS's income, however, was regularly withdrawn from the Blue Account and transferred to the Green Account. SOTS' annual tax returns only reported the payroll figures from the Green Account to the Internal Revenue Service (the "IRS").

In 1996, Buskett was audited by the IRS. The IRS requested that Buskett produce all of the Green Account's deposit slips. Buskett and Rebbe subsequently manufactured false deposit slips to give the appearance that the funds in the Green Account came from different sources. In reality, all of the deposits in the Green Account were from the same source—the Blue Account. In April 1999, Rebbe and his attorney met with the Government to explore the possibility of a plea. Prior to making a proffer, both Rebbe and his attorney signed the Government's standard form proffer agreement (the "Waiver").

The Waiver stated that although Rebbe's proffer statements were inadmissible as part of the Government's case-in-chief,

> the government may use ... statements made by you or your client at the meeting and all evidence obtained directly or indirectly from those statements for the purposes of cross-examination should your client testify, or to rebut any evidence, argument or representations offered by or on behalf of your client in connection with the trial....

In his proffer, Rebbe admitted that he advised Buskett to open the Blue Account and that he was aware that the tax returns he prepared for SOTS did not reflect the company's true payroll.

Rebbe met with the Government a second time on May 5, 1999. Both Rebbe and his attorney again signed the Waiver before answering questions from the Government. In his second proffer, Rebbe admitted that he manufactured false duplicate deposit slips for the Green Account; advised Buskett to open the Blue Account; and knowingly filed false corporate tax returns for SOTS in 1993 and 1994.

On November 2, 2000, Rebbe was indicted. The plea negotiations with the Government failed and Rebbe was notified of the Government's intent to introduce his proffer statements at trial pursuant to the terms of the Waiver. Rebbe responded with a motion to exclude or limit the Government's use of his proffer statements.

The district court denied Rebbe's motion, concluding that Rebbe's proffer state-

ments were admissible to rebut any evidence or arguments he made at trial that were inconsistent with his proffer statements. The district court explained that if the Government wished to admit Rebbe's proffer statements, it should advise the court of its intent to do so immediately prior to resting its case-in-chief. The district court would then inquire as to whether Rebbe wished to present a defense. If Rebbe answered in the affirmative, the district court explained that it would defer ruling on the admissibility of the proffer statements until after the close of the defense's case. If, however, Rebbe elected to present no defense, Rebbe's proffer statements were admissible at the end of the Government's case-in-chief, so long as Rebbe had presented evidence or made arguments and/or representations at trial that were inconsistent with his proffer statements.

After the Government rested, Rebbe asked for an advisory ruling from the district court as to whether the admissibility of Rebbe's proffer statements had been triggered. The district court declined to issue such a ruling. Rebbe subsequently informed the district court that he intended to present a defense. In his defense, Rebbe did not choose to testify but called four witnesses in support of his case.

At the close of Rebbe's case, the Government moved to introduce Rebbe's proffer statements in rebuttal. The Government argued that Rebbe presented contradictory evidence and arguments in his opening statement, his questioning of Government witnesses, and his examination of defense witnesses. The district court granted the Government's request and permitted the Government to admit Rebbe's proffer statements as to the following matters—that "he knew the payroll tax returns did not show true payroll; that he advised Mr. Buskett not to bring

him records of the [Green Account] ... that he advised Mr. Buskett where to deposit large checks" and that he assisted in the production of false deposit slips.

On May 23, 2001, Rebbe was convicted on all counts. The district court sentenced Rebbe to one year and one day of imprisonment, three years of supervised release, and an $1800 special assessment.

## STANDARD OF REVIEW

■ Whether a defendant may waive the prohibition against the introduction of plea negotiation statements is a question of law and statutory interpretation, and therefore, is reviewed de novo. *See Anderson v. United States,* 966 F.2d 487, 489(9th Cir.1992).

The Government, however, takes issue with the appropriate standard of review because it contends that Rebbe never raised the issue of the Waiver's enforceability at the district court. It is the Government's position that this Court should review the district court's ruling for plain error. We disagree.

There are ample facts in the record to demonstrate that Rebbe raised this issue before the district court. In Rebbe's motion to exclude, he argued that the Waiver was vague and that the proffer statements could not be admitted in the Government's case-in-chief. Furthermore, the district court expressly noted that it was rejecting Rebbe's arguments as to the "enforceability" of the Waiver. The district court was clearly on notice that Rebbe was objecting to the Waiver's enforceability under the Federal Rules.

Accordingly, we reject the Government's argument and review this issue de novo.

## DISCUSSION

Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6)

are substantively identical in that they prohibit the admission of statements made by a criminal defendant during a plea discussion. *United States v. Mezzanatto,* 513 U.S. 196, 200, 115 S.Ct. 797, 130 L.Ed.2d 697 (1998). Rule 410 states in pertinent part that:

> [E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant . . . who . . . was a participant in the plea discussions: . . . (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure . . .; or (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty.

Fed.R.Evid. 410.

■ Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6), however, are subject to waiver for purposes of impeachment, so long as the waiver was knowing, voluntary and intelligent. *Mezzanatto,* 513 U.S. at 200, 115 S.Ct. 797. In *Mezzanatto,* the Supreme Court held that the Federal Rules are waiveable for purposes of impeaching a defendant who chooses to testify at trial. 513 U.S. at 200–203, 115 S.Ct. 797. The Federal Rules are presumptively waiveable, absent some affirmative indication of Congress's intent to preclude such a waiver. *Id.* at 201, 115 S.Ct. 797. "[T]he plea-statement Rules were enacted against a background presumption that legal rights generally, and evidentiary provisions specifically, are subject to waiver by voluntary agreement of the parties." *Id.* at 203, 115 S.Ct. 797.

■ In the present case, Rebbe argues that the district court erred when it al-lowed for the possibility of admitting his proffer statements during the Government's case-in-chief. Rebbe contends that his proffer statements were admissible only to impeach him should he testify at trial and that the Government cannot introduce a criminal defendant's proffer statements in its case-in-chief.

Here, however, the Government did not present Rebbe's proffer statements in its case-in-chief. The Government moved to admit Rebbe's proffer statements in rebuttal, after Rebbe finished presenting his defense. Although we recognize that in *Mezzanatto,* Justice Ginsburg's concurring opinion, joined by Justice O'Connor and Justice Breyer, expressed serious doubt and concern as to whether such waivers are enforceable in cases where the Government seeks to admit a defendant's proffer statements in its case-in-chief, those facts are not presently before us. *Id.* at 211, 115 S.Ct. 797 ("a waiver to use such statements in the case-in-chief would more severely undermine a defendant's incentive to negotiate."). In the case at bar, Rebbe elected to present a defense at trial. The Government did not move for admission of Rebbe's proffer statements until *after* Rebbe rested. Therefore, the district court did not rule on the admissibility of the proffer statements until after the close of Rebbe's defense. The concerns raised in Justice Ginsburg's concurring opinion, as a result, are not implicated. Because the Government did not use Rebbe's proffer statements in its case-in-chief, we decline to address the larger issue of whether this or any other waiver, permitting the Government to use a defendant's proffer statements in its case-in-chief, is enforceable under the Federal Rules.[1] Instead,

---

1. The *Mezzanatto* Court left open the question of whether waivers that permit the Government to admit a defendant's proffer in its case-in-chief are enforceable. Had the Government introduced Rebbe's proffer in its case-in-chief or, alternatively, had Rebbe

we confine our analysis strictly to the facts of this particular case. The only issue presently before us is whether the district court erred in admitting Rebbe's proffer statements in rebuttal.

The Waiver in this case is broadly worded. It permits the Government to use Rebbe's proffer statements "to rebut any evidence, argument or representations" offered by Rebbe or on his behalf in connection with the trial. Both Rebbe and his attorney signed the Waiver. At the proffer session, Rebbe was represented and advised by counsel. Hence, the admissibility of the proffer statements was triggered if Rebbe or his attorney presented any evidence or made any arguments and/ or representations at trial that were inconsistent with his proffer statements. *See United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir.1998) ("Introduction of the statements thus was proper if either his testimony or evidence that he presented through the testimony of others contradicted the proffer.") (citations omitted).

At trial, Rebbe presented a defense and vigorously cross-examined Government witnesses. Specifically, Rebbe elicited testimony from witnesses implying that Buskett possessed the financial expertise and sophistication to design and execute SOTS' fraudulent bank account scheme independently. Witnesses also testified that only records from the Green Account were ever delivered to Rebbe, implying that Rebbe possessed no knowledge about the Blue Account. Lastly, Rebbe presented evidence that he played no role in manufacturing duplicate deposit slips submitted to the IRS.

■ Therefore, in light of the fact that Rebbe presented a defense that was inconsistent with his proffer statements and the Government did not seek to admit Rebbe's proffer statements in its case-in-chief, we cannot discern any error on the part of the district court in admitting Rebbe's proffer statements in rebuttal. As noted by the Supreme Court, the Federal Rules of Evidence and Criminal Procedure are presumptively waiveable. *Mezzanatto*, 513 U.S. at 204, 115 S.Ct. 797. The burden is on Rebbe to overcome this presumption by identifying some affirmative basis for concluding that the Federal Rules cannot be waived for purposes of rebuttal. *Id.* In weighing whether this presumption has been overcome, public policy considerations and their impact should be duly considered. *Id.* at 204–210, 115 S.Ct. 797. In the present case, Rebbe failed to make such a showing.

Having carefully examined the record in this appeal, we find that the facts in this case are analogous to those in *Mezzanatto*. In *Mezzanatto*, the Government sought to admit the defendant's proffer statements, after he testified at trial in a manner that was inconsistent with his proffer statements. *Id.* at 199, 115 S.Ct. 797. Although Rebbe did not testify at trial, four witnesses testified in his defense, and Rebbe's attorney presented evidence and made representations at trial that were inconsistent with his proffer statements.

■ Enforcing this Waiver for purposes of rebuttal will assist in promoting the truth-seeking function of trials. As noted by the Supreme Court, "The admission of plea statements for impeachment purposes *enhances* the truth-seeking func-

elected to present no defense at trial and forced the Government to move for admission of the proffer as the last item in its case-in-chief, the serious concerns raised in Justice Ginsburg's concurring opinion in *Mezzanatto* would be clearly triggered. This, however, is not the case before us and we need not explore this question to resolve the issues raised by Rebbe in this appeal.

tion of trials and will result in more accurate verdicts." *Id.* at 204, 115 S.Ct. 797. Similarly, the use of proffers in rebuttal encourages criminal defendants to present defenses at trial that are not fraudulent. If Rebbe, for instance, were to present evidence or arguments at trial that were inconsistent with his proffer statements, the Waiver expressly permitted the Government to introduce the proffer statements in rebuttal. Such waivers may help ensure that criminal defendants make proffers to the Government that are straightforward and honest. *See Krilich,* 159 F.3d at 1024 ("By authorizing the prosecutor to use his statements if he should contradict himself, [the defendant] made his representations more credible . . . .").

Rebbe argues that Waivers such as this one, however, will substantially reduce a criminal defendant's incentive to enter into plea discussions. According to Rebbe, the "zone of unrestrained candor" in plea negotiations that Congress intended to create through the Federal Rules would be undermined through such waivers. Although the Supreme Court in *Mezzanatto* recognized that some defendants may be deterred from entering into plea discussions if such waivers are enforceable, *id.* at 207, 115 S.Ct. 797("[T]he availability of waiver may discourage some defendants from negotiating."), the Court ultimately rejected this basis for prohibiting such waivers as being "unfounded." *Id.* at 209, 115 S.Ct. 797. Similarly, in the present case, Rebbe failed to demonstrate that Congress affirmatively intended to bar waivers such as this one or, alternatively, why our present system of plea-bargaining would be undermined if this Waiver were

deemed enforceable for purposes of rebuttal. Rebbe's argument is entirely too speculative and without sufficient justification to support his appeal.

Rebbe's contention that this Waiver deprives him of his right to present a defense at trial is also without merit. Rebbe agreed to the Waiver voluntarily and with the advice of counsel. In spite of the Waiver, Rebbe was still free to make any arguments or ask any questions he wished to at trial. The only limitation on Rebbe's right to present a defense was that if he presented evidence or arguments that were inconsistent with his proffer statements, the Government could introduce his proffer statements in rebuttal.

Rebbe had available to him a range of possible arguments and defenses at trial that could have been used without triggering the proffer's admission.[2] For instance, Rebbe was free to challenge the sufficiency of the Government's evidence; call into question the credibility of Government witnesses; question Government witnesses about their knowledge and qualifications; challenge inconsistencies in the Government's evidence; and ask Government witnesses about their motives for testifying against Rebbe. *See Krilich,* 159 F.3d at 1025 ("Impeachment of a witness need not be 'contrary to' or 'inconsistent with' a defendant's admission of guilt in a bargaining proffer.").

## CONCLUSION

For the foregoing reasons, we find that the district court's decision to admit Rebbe's proffer statements in rebuttal was

---

**2.** Assistant United States Attorney Susan DeWitt claimed that there was very little that a defendant in Rebbe's position could do at trial and informed the district court, "I can't think of anything, as I sit here today, that would not, in my mind, trigger the Government's right to rebut." This is incorrect. Had Rebbe's position been as hopeless as that suggested by the Government, Rebbe's claim that his right to present a defense at trial was violated would have more merit.

not erroneous, and we **AFFIRM** the judgment of the district court.