618 P.2d 229

STATE of Arizona, Appellee,

v.

Ruben VARGAS, Jr., Appellant.

No. 4425.

Supreme Court of Arizona,
In Banc.

Sept. 15, 1980.

Rehearing Denied Oct. 21, 1980.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, David Brauer, Deputy Public Defender, Phoenix, for appellant.

GORDON, Justice:

Defendant Ruben Vargas appeals from his convictions of first–degree murder and first–degree burglary and from the sentences imposed. Taking jurisdiction pursuant to A.R.S. § 13–4031, we reverse.

On the evening of April 8, 1978, defendant was in a car driven by Ralph Hernandez. Also present were Danny Garcia and Manuel Thomas Lujan. The four young men had been drinking beer and malt liquor since late in the afternoon and had been riding about in Hernandez' car for several hours, making stops to visit various persons. Garcia and Hernandez testified that Lujan stated that he wanted to ."make some money" by stealing and that defendant suggested Southern House, a half–way house run by the Department of Corrections, which was nearby. Officer Michael Grant of the Phoenix Police Department also testified that Vargas admitted that this conversation with Lujan took place.

Vargas, who resided at Southern House several years before, led the four men onto the grounds. Hernandez testified that defendant reached into an open window and took a loaf of bread which he gave to Hernandez. Shawn Brogan, a resident of Southern House, came out of his cottage and saw three individuals. Vargas asked Brogan if a person named Santos was at Southern House. Brogan replied that there was no such person at Southern House and Brogan then went into the main building of Southern House. Officer Grant testified that defendant told him that he knew the purpose of the four men was to steal and that he had asked about Santos merely to avoid arousing suspicion.

Garcia stated that defendant then entered the cottage which Brogan had left. Garcia also testified that later in the evening defendant showed him a wallet he had taken from Brogan's cottage. Hernandez related that Vargas showed him a watch taken from the cottage.

When Brogan entered the main building he saw another resident, Thomas Ira Miller, talking on the telephone. Brogan told Miller he had seen three men looking around outside. Miller went out to investigate, and Garcia, fearing that Miller would discover the burglary of Brogan's cottage, hit Miller, knocking him unconscious. Lujan than came over and stabbed Miller in the abdomen. Miller died several hours later from the wound inflicted by Lujan. Garcia stated that after the stabbing Vargas assisted him in removing a wallet which was attached by a chain to Miller's pants.

At trial, defendant admitted his presence at Southern House at the time of the stabbing but denied any participation in criminal activity. He stated that his purpose in being there was to visit Santos. He denied taking the bread, entering Brogan's cottage, or assisting in taking Miller's wallet. He also disclaimed having stated to Lujan that Southern House was a good place to steal something. He admitted making incriminating statements to the police, but he claimed that those statements were not true.

■ On appeal defendant first contends that there was insufficient evidence to convict him of murder under a felony–murder theory. This argument is based solely on a claim that there was no evidence that defendant participated in robbing Miller. Without considering the evidence connecting defendant to the robbery of Miller we note that the evidence showed that Miller was stabbed in the perpetration of the burglary of Brogan's cottage, and there was direct testimony that Vargas had participated in this burglary. Since murder in the perpetration of burglary is classified as first–degree murder under A.R.S. § 13–452 in effect at the time,[1] there was sufficient evidence to sustain defendant's conviction of first–degree murder.

■ Defendant next contends that the trial court committed reversible error in permitting the state to impeach his testimony by means of a document signed by defendant as part of a prospective plea agreement. We agree.

During discussions concerning a possible plea of guilty defendant signed a document which affirmed that his earlier statements to police were truthful. The document was to become part of the plea agreement which would require defendant to testify truthfully about the events on April 8, 1978. When defendant, on cross–examination, denied the truth of his statements to police, the state impeached him by repeatedly referring to his signing of the document. Moreover, the state relied on the signed document in its closing argument.

Rule 410, Rules of Evidence, 17A A.R.S. provides:

> "Except as otherwise provided by applicable Act of Congress, Arizona statute, or the Arizona Rules of Criminal Procedure, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere or no

---

1. This classification has not been changed under the present Criminal Code. A.R.S. § 13–1105A(2).

contest, or an offer to plead guilty, nolo contendere or no contest to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers is not admissible against the person who made the plea or offer in any civil or criminal action or administrative proceeding."

Similarly, Rule 17.4f, Rules of Criminal Procedure, 17 A.R.S. provides in pertinent part:

"However, if no agreement is reached, or if the agreement is revoked, rejected by the court, or withdrawn or if the judgment is later vacated or reversed, neither the plea discussion nor any resulting agreement, plea or judgment, nor statements made at a hearing on the plea, shall be admissible against the defendant in any criminal or civil action or administrative proceeding."

The state maintains that since the document itself does not refer to a guilty plea or a plea negotiation, the above rules do not apply. We believe, however, that the signing of the document was part of the plea discussion and comes within the ambit of the rules of exclusion.

The state, relying on *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), also maintains that Rule 410 and Rule 17.4f only apply to the substantive use of a plea discussion but not to its use for impeachment. We cannot agree. In *Harris, supra*, the Supreme Court of the United States held that a statement made by a defendant without benefit of *Miranda* warnings, but which was otherwise voluntary and trustworthy, was admissible for purposes of impeachment. We are not concerned here with the prophylactic rule of *Miranda*.

To permit the use of plea discussions for impeachment would have a strong chilling effect on plea negotiations. Additionally, the use of statements made in the expectation of a plea agreement raises serious fifth amendment problems of voluntariness which the rules obviously meant to avoid. We hold, therefore, that the trial court erred in permitting the state to impeach defendant's testimony by means of the document he signed during plea negotiations.

We do not find this error to be harmless. The basic issue at trial was credibility. Defendant's convictions rest on the testimony of Hernandez and Garcia and on his own postarrest admissions. Both Hernandez and Garcia were involved in the killing and were testifying under plea agreements. Although each witness testified to defendant's incriminating behavior or statements, most of the individual details were supplied by either Garcia or Hernandez, but not both.

The damaging effect of defendant's own admissions to police could possibly have been lessened by the jury's consideration of defendant's youth, lack of education, low ability to communicate and understand questions, and his nervousness immediately after arrest. However, on balance, we cannot say that the use of a statement signed by defendant verifying his earlier admissions was not prejudicial.

■ Defendant also asserts that in examining Hernandez on re–direct the prosecutor improperly injected his personal opinion that Hernandez was telling the truth. Defense counsel elicited from Hernandez on cross–examination an admission that the witness had initially lied to the police. On redirect the prosecutor brought out the fact that Hernandez had made an agreement with the state under which he would not be prosecuted for first–degree murder if he testified truthfully but that he would be subject to prosecution if he did not. We do not find this form of rehabilitation to be improper.

As a matter of fairness and ethical behavior, a prosecutor should not vouch for the credibility of the state's witnesses. *See State v. King*, 110 Ariz. 36, 514 P.2d 1032 (1973); 17A A.R.S., Rule 29(a), Rules of Supreme Court, DR7–106(C)(4). However, after the credibility of a witness for the state has been attacked by the defense, the prosecutor may attempt to bolster his witness' credibility by showing that he is testifying pursuant to a plea agreement which requires truthful testimony. Such evidence

62

does not amount to personal vouching by the prosecutor. *See, e. g., United States v. Arroyo–Angulo,* 580 F.2d 1137, *cert. denied,* 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978).

We note, as did the court in *Arroyo–Angulo, supra,* that evidence that a witness for the state is testifying pursuant to a plea agreement creates contradictory inferences. Although the state may argue that such an agreement enhances its witness' credibility, the defendant may argue with equal soundness that such testimony should not be trusted since it is motivated by the witness' desire to avoid punishment. The prosecutor's redirect examination of Hernandez was not improper.

Defendant raises several other contentions concerning prosecutorial misconduct, improper jury instructions and incorrect sentence. Since these claimed errors are unlikely to arise on retrial we find it unnecessary to consider them.

Reversed and remanded for new trial.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and CAMERON, JJ., concur.