IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2 CA-SA 2009-0010 |
| HON. HECTOR E. CAMPOY, Judge of | ) | DEPARTMENT A |
| the Superior Court of the State of | ) | |
| Arizona, in and for the County of Pima, | ) | O P I N I O N |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LELAND FLORENCIO CROCKWELL, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20070701

JURISDICTION ACCEPTED; RELIEF GRANTED

Barbara LaWall, Pima County Attorney
  By Jacob R. Lines                                                      Tucson
                                                  Attorneys for Petitioner


Robert J. Hirsh, Pima County Public Defender
  By Paul Skitzki, Amy S. Chapman, and David                            Tucson
  J. Euchner                              Attorneys for Real Party in Interest

H O W A R D, Presiding Judge.

¶1        In this special action, petitioner State of Arizona challenges the respondent judge's order granting real party in interest Leland Florencio Crockwell's motion in limine to preclude the state from introducing in its case-in-chief in the underlying criminal proceeding statements Crockwell made to law enforcement officers on three separate occasions:  in anticipation of a possible plea agreement, and on two separate occasions pursuant to a truthful-cooperation clause after Crockwell and the state had entered into a plea agreement from which the state subsequently withdrew.  The respondent judge limited the state's use of these statements to impeachment purposes, in the event Crockwell testified. The state's special action petition, filed after the respondent judge denied its motion to clarify or reconsider his earlier ruling, raises important issues of law regarding the scope and application of Rule 410, Ariz. R. Evid., and Rule 17.4(f), Ariz. R. Crim. P.  For the reasons stated below, we accept jurisdiction of this special action and grant relief.

**Special Action Jurisdiction**

¶2        It is appropriate that we exercise our discretion and accept jurisdiction of this special action.  *See State ex rel. Thomas v. Ditsworth*, 216 Ariz. 339, ¶ 7, 166 P.3d 130, 132 (App. 2007) (acknowledging discretionary nature of appellate court's decision to exercise special action jurisdiction).  First, the state has no equally plain, speedy, or adequate remedy by appeal.  *See* Ariz. R. P. Spec. Actions 1(a); *see also State ex rel. Thomas v. Duncan*, 216 Ariz. 260, ¶ 4, 165 P.3d 238, 240 (App. 2007); A.R.S. § 13-4032 (setting forth kinds of

2

orders from which state may appeal); *cf. State ex rel. Romley v. Martin*, 203 Ariz. 46, ¶ 5, 49 P.3d 1142, 1143 (App. 2002), *aff'd*, 205 Ariz. 279, 69 P.3d 1000 (2003) (accepting jurisdiction of state's petition to determine whether defendant may be impeached with prior felony convictions, finding state had no plain, speedy or adequate remedy by appeal). Second, the issues raised in this special action involve questions of law relating to the interpretation and application of procedural rules and are "of statewide importance to the judiciary and the litigants who come before it on criminal matters." *Bergeron ex rel. Perez v. O'Neil*, 205 Ariz. 640, ¶ 12, 74 P.3d 952, 958 (App. 2003).

¶3        Crockwell correctly asserts that the state had a burden to provide this court with the portions of the record that relate to the issues it is raising in this special action. *See* Ariz. R. P. Spec. Actions 7(e) (petition "shall be supported by an appendix of documents in the record before the trial court that are necessary for a determination of the issues raised by the petition"). He argues, however, that the state did not sustain that burden and for this reason alone we should decline to accept jurisdiction of the special action. But the state has provided us with a sufficient record to address the disputed issues raised here. Neither the state's nor Crockwell's filings below or here raised any issues concerning the proceedings for which portions of the record are missing. The state therefore was not on notice that any additional portions of the record were necessary or that Crockwell would attempt to expand the issues. And any facts relating to the issues actually raised that might have been established by missing portions of the record have either been conceded by Crockwell in his

3

response to the state's special action petition or are adequately established by the record provided. *See Piner v. Superior Court*, 192 Ariz. 182, ¶ 10, 962 P.2d 909, 912 (1998) (accepting special action jurisdiction when facts uncontested and legal issue could "properly be decided on the present record").

¶4　　　　Moreover, if Crockwell believed that portions of the record critical to issues he intended to raise had been omitted, he should have provided this court with those materials. *See* Ariz. R. P. Spec. Actions 7(e) ("The response to the petition shall, if necessary, be supported by an appendix of documents in the record before the trial court that are necessary for a determination of the issues raised by the petition which are not contained in the petitioner's appendix."). Accordingly, we reject Crockwell's request that we decline jurisdiction on the ground that the state allegedly failed to provide this court with a complete record.

**Background**

¶5　　　　Crockwell was charged by indictment with conspiracy to commit possession and/or transportation of marijuana for sale and possession of marijuana for sale. In a letter to Crockwell's attorney dated March 30, 2007, the Deputy Pima County Attorney stated that, if Crockwell was interested in obtaining a beneficial, non-trial resolution of the charges and was willing to assist law enforcement, he would be required to participate in "a debriefing" or "free talk." Once the state had the opportunity to evaluate the information he provided, a decision would be made whether to make Crockwell an offer. The letter provided further

4

that, subject to specified exceptions, "[a]nything [Crockwell] said during the debriefing will not be used against [him] or disclosed in any fashion . . . ." Among the exceptions were the following:

> 1. If your client gives false, misleading, or incomplete information during the debriefing, what he says may be used against him.
>
> . . . .
>
> 3. If no working agreement is reached after the debriefing, the debriefing will not be used by the State in its case in chief, but if your client takes the stand and testifies inconsistently to what was said in the debriefing, the debriefing will be used to impeach him and your client is subject to possible perjury prosecution. The same thing applies to Rule 32 hearings, ROPs, etc.

¶6        Accompanied by his counsel, Crockwell met with detectives Hedrick and Figueroa at the office of the Pima County Attorney on April 11, 2007, for the debriefing. Crockwell gave the officers a version of the events that had resulted in his arrest. In sum, Crockwell stated that a number of individuals, including his codefendants, had intimidated him into allowing them to bring almost 5,000 pounds of marijuana to Crockwell's place of employment, leave the drugs there overnight, and transport them out the next morning. Crockwell maintained that these individuals had been armed and that he had been coerced into cooperating with them.

¶7        On April 19, 2007, Crockwell and the state entered into a plea agreement, pursuant to which Crockwell pled guilty to the conspiracy charge. The agreement provided

5

that Crockwell would truthfully cooperate with the investigation and prosecution of, inter alia, "any co-defendants or co-conspirators." The plea agreement further provided as follows:

> Should the State in its sole discretion determine the Defendant has been untruthful or uncooperative, the State may in its sole discretion elect to declare this agreement, null and void thus placing the parties in the same position they were before this agreement was entered or the State may elect to advise the Court of its conclusion for the Court to consider in sentencing the Defendant.

> Should the Court make a finding that the Defendant testified untruthfully or otherwise falsely incriminated others, the Court may order this agreement to be set aside, placing the parties in the same position they were before the agreement was entered, or may consider its findings in sentencing the Defendant under this agreement. Nothing in this agreement shields the Defendant in anyway [sic] from any consequences of any act of untruthfulness in the performance of [his] obligations pursuant to this agreement.

¶8 Crockwell met with Hedrick a second time on July 12, 2007, at defense counsel's office. He provided additional information regarding the persons who had been involved in the marijuana transaction. Apparently, on August 26, either Crockwell or a family member reported to the Pima County Sheriff's Department that someone had tried to force Crockwell into his car at gunpoint. Crockwell's attorney contacted the county attorney's office and, on the following day, August 27, Crockwell met Detective Hedrick and another officer at a fast-food restaurant and gave his third statement. Crockwell made statements that were inconsistent with what he had said in his previous two statements. He

6

essentially admitted that his participation in the drug deal had not been under duress, that he had known and expected the drugs would be delivered, and that he had attempted to arrange transactions with the same individuals in the past.

¶9　　　　The respondent judge subsequently permitted the state to withdraw from the plea agreement.  In August 2008, Crockwell filed a motion in limine seeking to preclude the state from introducing at trial in its case-in-chief what Crockwell referred to as his "four free talks."  Relying on the state's letter of March 30, 2007, Crockwell asserted the third exception to the state's agreement not to use his statements against him applied and, therefore, based on "contractual theories" and Rule 17.4(f), Ariz. R. Crim. P., the state could only introduce his statements in the event Crockwell testified at trial inconsistently with the statements he had made.  On October 21, 2008, the respondent judge ruled "that the defense motion to preclude the defendant's statements made to law enforcement officers in connection with his required cooperation and truthfulness as part of his plea agreement is granted."  The respondent added that the state would only be permitted "to use these statements as impeachment should the defendant testify."  The state filed a motion to clarify or reconsider the ruling and, after a hearing, the respondent reaffirmed his October ruling. This petition for special action followed.

**Rule 410, Arizona Rules of Evidence, and
Rule 17.4(f), Arizona Rules of Criminal Procedure**

¶10 The state argues that neither Rule 410, Ariz. R. Evid., nor Rule 17.4(f), Ariz. R. Crim. P., applies to or precludes admission of Crockwell's second and third statements, made in July and August. It implicitly concedes, however, that those rules do apply to the first "free talk" statement.

¶11 "[W]e review de novo questions involving the interpretation of court rules and 'evaluate procedural rules using principles of statutory construction.'" *Haroutunian v. Valueoptions, Inc.*, 218 Ariz. 541, ¶ 6, 189 P.3d 1114, 1117 (App. 2008), *quoting Fragoso v. Fell*, 210 Ariz. 427, ¶¶ 7, 13, 111 P.3d 1027, 1030, 1032 (App. 2005). "Consequently, '[o]ur primary objective is to discern and give effect to the intent of . . . our supreme court in promulgating [the rule].'" *Bergeron*, 205 Ariz. 640, ¶ 16, 74 P.3d at 958, *quoting Vega v. Sullivan*, 199 Ariz. 504, ¶ 8, 19 P.3d 645, 648 (App. 2001) (alteration and omission in *Bergeron*). The plain language of a rule is the "best indicator" of the supreme court's intent in promulgating it; consequently, "[i]f the language is clear and unambiguous, we give effect to that language and do not employ other methods of . . . construction." *Fragoso*, 210 Ariz. 427, ¶ 7, 111 P.3d at 1030. But when the language is "'inconclusive or ambiguous, we then consider other factors such as [its] context, subject matter, effects, consequences, spirit, and purpose.'" *Bergeron*, 205 Ariz. 640, ¶ 16, 74 P.3d at 958, *quoting Vega*, 199 Ariz. 504, ¶ 8, 19 P.3d at 648 (alteration in *Bergeron*).

¶12 Rule 410, Ariz. R. Evid., provides as follows:

> Except as otherwise provided by applicable Act of Congress, Arizona statute, or the Arizona Rules of Criminal Procedure,

evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere or no contest, or an offer to plead guilty, nolo contendere or no contest to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers is not admissible against the person who made the plea or offer in any civil or criminal action or administrative proceeding.

Rule 410 is consistent with Rule 17.4(f), Ariz. R. Crim. P., which pertains to disclosure and confidentiality in the context of plea negotiations and agreements. It provides as follows:

When a plea agreement or any term thereof is accepted, the agreement or such term shall become part of the record. However, if no agreement is reached, or if the agreement is revoked, rejected by the court, or withdrawn or if the judgment is later vacated or reversed, neither the plea discussion nor any resulting agreement, plea or judgment, nor statements made at a hearing on the plea, shall be admissible against the defendant in any criminal or civil action or administrative proceeding.

Ariz. R. Crim. P. 17.4(f).

¶13        We agree with the state that Rule 17.4(f) is clear and unambiguous. It plainly precludes the state from using statements a defendant made during "the plea discussion," that is, statements made in a discussion that precedes the plea agreement and anything in the agreement itself, as well as statements made during a change-of-plea hearing. *See State v. Vargas*, 127 Ariz. 59, 61, 618 P.2d 229, 231 (1980) (holding both Rule 410 and Rule 17.4(f) preclude impeaching a defendant with "statements made in the expectation of a plea agreement," including a "document . . . signed during plea negotiations"); *see also State v. Fillmore*, 187 Ariz. 174, 178 n.3, 927 P.2d 1303, 1307 n.3 (App. 1996) (finding "Rule 410 protects any plea offers that would also be protected by Rule 17.4(f)"). Rule 17.4(f) does

9

not, on its face, apply to statements made pursuant to a truthful-cooperation clause after an agreement is reached.

¶14    But Rule 410's language differs significantly from that of Rule 17.4(f). Rule 410 renders inadmissible against a defendant in a criminal or civil proceeding "evidence of a plea of guilty, later withdrawn, . . . or an offer to plead guilty . . . or of statements made *in connection with* any of the foregoing pleas or offers." (Emphasis added.) The phrase, "in connection with" injects ambiguity into Rule 410. *See United States v. Davis*, 617 F.2d 677, 682-83 (D.C. Cir. 1979) (finding ambiguous same language in former Rule 410, Fed. R. Evid., and former Rule 11(e)(6), Fed. R. Crim. P., and applying construction principles to interpret rules and determine intended application and scope). It is unclear whether "in connection with" includes statements made by a defendant pursuant to a truthful-cooperation clause after he has entered into a plea agreement that is subsequently revoked, rejected by the court, or withdrawn, or whether the protection afforded by the rule is confined to statements in a plea agreement or those made during discussions about a possible plea agreement, plea negotiations, and the proceeding in which a plea is entered.

¶15    Few Arizona cases have addressed the scope and application of Rule 410, Ariz R. Evid., and none addresses the issues raised here. In *Vargas*, 127 Ariz. at 60-61, 618 P.2d at 230-31, for example, our supreme court held that Rule 410 prohibited the state from introducing, either in its case-in-chief or for impeachment purposes, a letter the defendant had signed "during plea negotiations," that is, "[d]uring discussions concerning a possible

10

plea of guilty." The court observed that "permit[ting] the use of plea discussions for impeachment would have a strong chilling effect on plea negotiations." *Vargas*, 127 Ariz. at 61, 618 P.2d at 231.

¶16 But in *State v. Stuck*, 154 Ariz. 16, 21, 739 P.2d 1333, 1338 (App. 1987), Division One of this court held that statements made to police officers "in the hope of winning some concessions" are not statements made "in connection with" a plea agreement for purposes of Rule 410. The court in *Stuck* agreed with this court's decision in *State v. Sweet*, 143 Ariz. 289, 294, 693 P.2d 944, 949 (App. 1984), *vacated in part on other grounds*, 143 Ariz. 266, 693 P.2d 921 (1985), in which we held that statements the defendant had made to police officers upon arrest about "a robbery that occurred at his house, ownership of the seized contraband, and the possibility of making a deal with the authorities whereby he could work off his charge by helping the police make a drug buy" were not statements "made in connection with any plea agreements and they did not fall under Rule 410." *See also Fillmore*, 187 Ariz. at 178, 927 P.2d at 1307 (concluding "Rule 410 does not protect statements that a suspect makes in an unsolicited offer to assist authorities in order to avoid prosecution or imprisonment").

¶17 In 1977, Arizona adopted, "with a few changes," the Federal Rules of Evidence, including Rule 410, Ariz. R. Evid., which, "for all intents and purposes, . . . [was] essentially the same as" Rule 410, Fed. R. Evid., before it was amended in 1979. *Wilson v. Riley Whittle, Inc.*, 145 Ariz. 317, 324, 701 P.2d 575, 582 (App. 1984); *see also* 115 Ariz.

XXX–LXV (1977) (supreme court's order promulgating Arizona Rules of Evidence and text of newly promulgated rules). Rule 410, Fed. R. Evid., and Rule 11(e)(6), Fed. R. Crim. P., mirrored one another until 2002, when Rule 11(e)(6) was renumbered as Rule 11(f) and amended to be expressly "governed by" Rule 410, Fed. R. Evid.[1] Until 1979, Rule 410, Fed. R. Evid., and Rule 11(e)(6), Fed. R. Crim. P., provided in relevant part that, when a defendant entered a guilty plea or offered to enter such a plea and the plea was later withdrawn, statements made by the defendant "in connection with, and relevant to, any of the foregoing pleas or offers" were inadmissible against the defendant in any criminal or civil proceeding. In 1979, Rule 410 and Rule 11(e)(6) were amended. The phrase, "statements made in connection with, and relevant to," was replaced with, "in the course of plea discussions." *See United States v. Marks*, 209 F.3d 577, 582 (6th Cir. 2000). Rule 410(4) now prohibits the admission against a defendant "in any civil or criminal proceeding . . . [of] any statement made in *the course of plea discussions* with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." (Emphasis added.)

¶18 "When interpreting an evidentiary rule that predominantly echoes its federal counterpart, we often look to the latter for guidance." *State v. Green*, 200 Ariz. 496, ¶ 10,

---

[1]Rule 11(e)(6), Fed. R. Crim. P., was amended in 1975 to add the language, "and relevant to," *see* Act of July 31, 1975, Pub. L. No. 94-64, § 3(10), 89 Stat. 370, and the same language was then added to Rule 410, *see* Act of Dec. 12, 1975, Pub. L. No. 94-149, 89 Stat. 805. Thus, there were times when the language of the two rules differed, but those differences were slight and insignificant.

12

29 P.3d 271, 273 (2001); *see also Hernandez v. State*, 203 Ariz. 196, ¶ 10, 52 P.3d 765, 767 (2002) ("In interpreting Arizona's evidentiary rules, we look to federal law when our rule is identical to the corresponding federal rule . . . ."). And, because Arizona essentially adopted the Federal Rules of Evidence, "'in the absence of Arizona precedent as a guide to interpretation of our rules, we will look to the federal courts which have interpreted the Federal Rules of Evidence.'" *State v. Haight-Gyuro*, 218 Ariz. 356, n.3, 186 P.3d 33, 36 n.3 (App. 2008), *quoting State v. Johnson*, 132 Ariz. 5, 8, 643 P.2d 708, 711 (App. 1981). We will examine federal case law interpreting the versions of Rule 410, Fed. R. Evid., and Rule 11(e)(6), Fed. R. Crim. P., that existed before the 1979 amendments. We consider, as well, the amendments and the commentary thereto, which reflect congressional intent with respect to the meaning and application of these rules.

¶19    We find the discussion of these two rules in *United States v. Davis*, 617 F.2d 677 (D.C. Cir. 1979), particularly instructive. There, the D.C. Circuit Court of Appeals addressed whether federal Rules 11(e)(6) and 410 prohibited the state from introducing against a defendant grand jury testimony he had provided pursuant to a plea agreement that had been formalized but was never entered and from which he later withdrew. *Davis*, 617 F.2d at 681-82. The court found the words "in connection with" in federal Rules 410 and 11(e)(6), "hardly free from ambiguity," adding, "there is no clear literal meaning that we are bound to give effect." *Davis*, 617 F.2d at 682. The court regarded the fact that this language "ha[d] been subject to a variety of interpretations, amendments, and proposed amendments"

13

as indicative of its ambiguity. *Id*. at 683 & n.14 (comparing *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978), and *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978), with *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977)).  Employing principles of statutory construction, the court considered the rule's "underlying policies" and purpose to determine the meaning of this language in Rule 11(e)(6) and the intended scope of the rule's application. *Id*. at 682-83.

¶20      The *Davis* court noted that "[t]he legislative history and the wording of subdivision (e)(6) . . . indicate that its main purpose is to promote the free and open negotiation that must precede any compromise between the defense and the prosecution." *Id*. at 685.  The court noted the defendant in that case testified before the grand jury after all plea negotiations had been concluded. *Id*.  Thus, the court reasoned, the rule's purpose of "encouraging compromise" would not be served by excluding this testimony. *Id*.  "Indeed, such a rule would permit a defendant to breach his bargain with impunity:  he could renounce the agreement and return to the status quo ante whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally." *Id*.

¶21      The *Davis* court found persuasive *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978).  In essentially the same circumstances, the Second Circuit there rejected the defendant's argument that the words "in connection with" in Rule 11(e)(6) included grand jury testimony he had provided in accordance with the plea agreement from which he subsequently withdrew. *Id*. at 730-31.  The defendant in *Stirling*, like the defendant in *Davis*,

14

argued he had provided the grand jury testimony "in connection with" the plea agreement, as contemplated by Rule 11(e)(6), and that the trial court had erred by admitting that testimony against him at trial. *Id.* The court acknowledged that "the language of the rule is capable of being read expansively, so as to reach Grand Jury testimony given after the plea bargain." *Id.* at 731. But, the court found, such a construction would not serve the rule's purpose of encouraging defendants to negotiate a plea "'without fear that [their] statements will later be used against [them].'" *Id.*, *quoting Herman*, 544 F.2d at 796.

¶22 Characterizing *Herman* as a decision giving the rule "its most generous interpretation,"[2] the *Stirling* court surmised that even the *Herman* court "would not likely immunize" the defendant's testimony before a grand jury after a plea has been entered but subsequently withdrawn. *Id.* The court commented, "The negotiations were over. All [the defendant] had to do was live up to his end of the bargain. His failure to do so justly exposed him to prosecutorial use of his Grand Jury testimony." *Id.* at 731-32.

¶23 As we previously noted, in 1979, Rule 410, Fed. R. Evid., and Rule 11(e)(6), Fed. R. Crim. P., were amended, replacing the phrase "in connection with, and relevant to," with "in the course of." Clearly, this was intended to narrow the interpretations of the rule.

---

[2]In *Herman*, the Fifth Circuit held Rule 11(e)(6) protected statements the defendant had made to a postal inspector, who the defendant erroneously believed had the authority to conduct plea negotiations, "during the course of a conversation in which he sought concessions from the government in return for a guilty plea." 544 F.2d at 793, 798.

15

The Advisory Committee Note to the 1979 amendment to Rule 11(e)(6), which mirrored the

same amendment to Rule 410, includes the following commentary:

> The major objective of the amendment to rule 11(e)(6) is to describe more precisely, consistent with the original purpose of the provision, what evidence relating to pleas or plea discussion is inadmissible. The present language is susceptible to interpretation which would make it applicable to a wide variety of statements made under various circumstances other than within the context of those plea discussions authorized by rule 11(e) and intended to be protected by subdivision (e)(6) of the rule.

The note goes on to point out the purpose behind Rule 11(e)(6) and Rule 401, as articulated

in initial Advisory Committee Notes and reflected in congressional commentary: namely,

to promote the resolution of criminal cases by plea agreements and encourage defendants to

be candid during plea negotiations. The commentary observed that a consequence of the

rules' ambiguity was varying interpretations by federal courts and that some courts, including

the Fifth Circuit in *Herman* and the Sixth Circuit in *United States v. Brooks*, 536 F.2d 1137

(6th Cir. 1976), had interpreted the rules more broadly than had been intended. *See also*

*Marks*, 209 F.3d at 582.[3]

---

[3]In his second notice of supplemental authority, filed after oral argument in this court, Crockwell asks us to consider two cases, which he referred to during the argument in support of his contention that his statements were inadmissible pursuant to Rule 410, Ariz. R. Evid.: *Gooden v. State*, 749 S.W.2d 657 (Ark. 1988), and *State v. Hovind*, 431 N.W.2d 366 (Iowa 1988). But in both cases, although the statements were made after a plea agreement was reached, they were at least arguably still part of plea negotiations, particularly in *Hovind*, where the court recognized the defendant could have made the statements not only pursuant to the existing plea agreement but in contemplation of a new one. 431 N.W.2d at 370. In any event, to the extent these cases stand for the proposition that post-plea statements are

16

**¶24** Based on these federal authorities and the intent reflected in the rules' history and commentary, we construe our Rule 410 narrowly, consistent with its original intent. Our supreme court has not changed the wording of Arizona Rule 410, as Crockwell points out, but there are no cases in Arizona construing the rule as broadly as some of the prior federal decisions, which had prompted the change in the federal rule to reinforce the rule's original intent. Like its federal counterpart, Arizona's Rule 410 was intended to encourage criminal defendants to enter into plea agreements by assuring them statements made while negotiating an agreement and in entering the plea agreement itself cannot be used against the defendant in the event no agreement is reached or the agreement is rejected by the court or withdrawn. The Arizona rule, like its federal counterpart, is designed to promote candor during this process. *See Vargas*, 127 Ariz. at 61, 618 P.2d at 231 ("To permit the use of plea discussions for impeachment would have a strong chilling effect on plea negotiations."). It was not intended to provide defendants with a shield from the consequences of providing law enforcement officials with untruthful information in order to obtain a favorable plea agreement. Protecting such statements does not serve the purpose of the rule: rather than promoting candor, it would reward deceitful conduct.

**¶25** The state does not dispute that the statements Crockwell made during the debriefing or "free talk" on April 11, 2007, fall within the purview of Rule 410's protection.

---

covered by rules similar to Arizona's, we reject them as construing the similar terms of their respective rules too broadly.

17

They are also protected by Rule 17.4(f), Ariz. R. Crim. P. But the statements Crockwell made pursuant to the truthful-cooperation clause on July 12 and August 27, months after he had entered into the plea agreement, were not made "in connection with . . . the foregoing plea[] or offers." Ariz. R. Evid. 410. And they are plainly not covered by Rule 17.4(f). Thus, to the extent the respondent judge based his decision to grant Crockwell's motion in limine on his conclusion that the July and August statements were protected by Rule 410, he erred.[4]

---

[4]Crockwell asserted for the first time in his April 2, 2009 notice of supplemental authority that the respondent judge never found Crockwell had been untruthful and argued the respondent therefore did not abuse his discretion by finding unpersuasive the federal cases the state had relied on below. Crockwell repeated that assertion at oral argument in this court, further arguing that because the state has not provided us with transcripts of the hearing during which the respondent permitted the state to withdraw from the plea agreement or the initial hearing on Crockwell's motion in limine, we cannot assume his lack of truthfulness or failure to cooperate were the reasons the state withdrew. Asserting new arguments in a notice of supplemental authority is a misuse of the rule permitting a party to file such a notice. *See* Ariz. R. Civ. App. P. 17; Ariz. R. P. Spec. Actions 7(i) (Arizona Rules of Civil Appellate procedure apply to special actions when not inconsistent with the special action rules); *see also Rowe Int'l, Inc. v. Ariz. Dep't of Revenue*, 165 Ariz. 122, 128, 796 P.2d 924, 930 (App. 1990) (refusing arguments raised for first time in supplemental citation of legal authority); *State v. Rossi*, 171 Ariz. 276, 281, 830 P.2d 797, 802 (1992) (argument waived when raised for first time in supplemental citation of legal authority submitted after briefing and before oral argument). And, "issues and arguments raised for the first time at oral argument . . . are untimely and deemed waived." *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004). Moreover, in his response to the state's special action petition, Crockwell did not dispute his untruthfulness was the reason he lost the plea; indeed, he conceded this fact when he stated he "ha[d] already paid the penalty for his actions during the free talk process—he lost the proffered plea agreement," and "[a]ny expectations that he could receive" a beneficial "'non-trial disposition,' as contemplated in the free talk agreement, have been forsaken." Consequently, as noted earlier the missing portions of the record are irrelevant. Crockwell also contended for the first time at oral argument that his August statements were not materially inconsistent with the statements he had made in April

18

**March 30 Letter and the Plea Agreement**

¶26 The state next argues that Crockwell waived any protection provided by the rules in the March 30, 2007 free-talk letter and the plea agreement. Based on the language the respondent judge used in his October 21, 2008 minute entry granting Crockwell's motion in limine and his January 5, 2009 minute entry denying the state's motion for reconsideration, it appears the respondent based his rulings on the March 30 letter.[5] And, the respondent seems to have found the third exception set forth in the letter applied to the statements Crockwell had made on all three occasions. We therefore must determine whether, in the March 30 letter, Crockwell waived any protection the rules extended to the April statement and whether that letter provided any protection for the July and August statements.

¶27 The March 30 letter set forth specific terms and conditions relating to the state's consideration of a "non-trial disposition" of the charges against Crockwell. Like plea agreements, "cooperation . . . agreements . . . are contractual in nature." *State v. Platt*, 162 Ariz. 414, 414, 783 P.2d 1206, 1206 (App. 1989); *see also Santobello v. New York*, 404 U.S.

and July and that the respondent judge never found they were. This assertion, too, is waived by his failure to raise it in his response and by the previously quoted concession in his response. *Id*. And, the statements themselves, which we do have before us, establish they were materially inconsistent. In Crockwell's third statement, after detectives repeatedly accused him of not being truthful, Crockwell implictly agreed and provided new information that conflicted with what he had previously told them.

[5]The respondent's comments during the hearing on the motion for reconsideration suggest he granted the state's request for a hearing and also may have based his rulings on principles of "fundamental fairness." But the supreme court rules govern the admissibility of evidence. *See generally* Ariz. R. Evid. 101, 102.

257, 262 (1971); *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008), *cert. denied*, 129 S. Ct. 1386 (2009) ("A proffer agreement is a contract and its terms must be read to give effect to the parties' intent"); *Mejia v. Irwin*, 195 Ariz. 270, ¶ 12, 987 P.2d 756, 758 (App. 1999) (plea agreement "is like a contract . . . and is subject to contract interpretation"). Applying principles of contract law, we "'must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive.'" *State v. Taylor*, 158 Ariz. 561, 564, 764 P.2d 46, 49 (App. 1988), *quoting Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977).[6]

**¶28**      The letter made clear that a condition precedent to any negotiations for a beneficial, non-trial resolution of the charges was Crockwell's willingness to cooperate truthfully with and assist law enforcement. The letter made equally clear that the state would not offer Crockwell a plea until he could be questioned during a "debriefing" and the state had the opportunity to evaluate the information it obtained. The letter encouraged Crockwell

---

[6]In his April 2 notice of supplemental authority and during oral argument in this court Crockwell argued for the first time that, to the extent the March 2007 letter or the plea agreement are ambiguous, they should be construed in his favor. Again, as previously noted, this is an improper use of a notice of supplemental authority, *see* Ariz. R. Civ. App. P. 17; *Rowe Int'l*, 165 Ariz. at 128, 796 P.2d at 930, and we do not address arguments raised for the first time at oral argument, *Mitchell*, 207 Ariz. 364, ¶ 16, 86 P.3d at 949-50. Moreover, in his response to the petition, Crockwell characterized the provisions of the letter as "unambiguous." To the extent he suggested either in the notice of supplemental authority or at oral argument that the plea was invalid because he may have misunderstood it or was promised something other than what is included in the express terms of the agreement, again, these arguments were improperly and untimely raised, and we fail to see their relevance, given that a plea agreement no longer exists.

20

to be candid by assuring him no statements would be used against him, subject to five exceptions. The first exception applies here. It permits the state to use any statements Crockwell made during the anticipated debriefing if he gave "false, misleading, or incomplete information." The exception contains no limitation on the state's use of the statements. Thus, the letter allows the state to use for any purpose the April 11 statement, which was otherwise protected under Rule 410, Ariz. R. Evid., and Rule 17.4(f), Ariz. R. Crim. P.

¶29       The third exception in the letter, on which Crockwell relies, is the only one that permits the state to use his statements for impeachment purposes only. But that exception does not apply here. First, the entire agreement is premised on Crockwell's truthful cooperation; because Crockwell did not give truthful statements, the first exception governs and we need not look to any of the other exceptions. And the third exception only applies if the state and Crockwell had been unable to reach a "working agreement . . . after the debriefing." Under those circumstances, the state would have been permitted to use the statements for impeachment purposes if Crockwell were to "take[] the stand and testif[y] inconsistently to what was said in the debriefing." But the parties did reach an agreement—albeit one that Crockwell breached by providing law enforcement untruthful information. Even though the agreement was declared "null and void" and the parties were returned to their original position because of Crockwell's breach, the parties' intent was that

21

that provision not apply if an agreement were reached. Therefore, the third exception does not apply.

¶30 Having determined that Crockwell and the state intended that the March 30 letter waive the protection the rules afforded the April statement, we must now determine if that waiver is permissible. In *United States v. Mezzanatto*, 513 U.S. 196, 200-01 (1995), the Supreme Court held that a defendant can waive the protections afforded by Rule 410, Fed. R. Evid., and Rule 11.4(e)(6), Fed. R. Crim. P., rejecting the Ninth Circuit's approach, which "deem[ed] waiver [of these rights] presumptively unavailable absent some sort of express enabling clause," and engaging instead in the "opposite presumption." Like Crockwell, the defendant in *Mezzanatto* agreed to a "free talk" as a condition to the government's consideration of whether to offer him a plea agreement. *Id*. at 198. The defendant agreed that, if no agreement were reached, the government could use the statements he had made during the "free talk" for impeachment purposes. *Id*. No agreement was ever reached. *Id*. at 198-99.

¶31 Reversing the Ninth Circuit, which had found the rights under the rule could not be waived, the Supreme Court reasoned that, "absent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties." *Id*. at 201, 211. The Court added, "The presumption of waivability has found specific application in the context of evidentiary rules." *Id*. at 202. The Court recognized that

> evidentiary stipulations are a valuable and integral part of everyday trial practice. Prior to trial, parties often agree in writing to the admission of otherwise objectionable evidence, either in exchange for stipulations from opposing counsel or for other strategic purposes. Both the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure appear to contemplate that the parties will enter into evidentiary agreements during a pretrial conference.

*Id*. at 203.

¶32　　The Supreme Court in *Mezzanatto* rejected the defendant's suggestion that stipulations implicating plea-statement rules are somehow distinguishable, finding the distinction to be one without a difference. *Id*. at 203, n.3. Thus, the Court concluded, a defendant can voluntarily waive the protections of federal Rules 410 and 11(e)(6), and the defendant had done so in that case. *Id*. at 210-11.

¶33　　In *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008), the Third Circuit Court of Appeals recently noted that in *Mezzanatto* the Supreme Court had "only considered the enforceability of proffer waivers for impeachment purposes, and five justices expressed doubt as to whether a waiver could be used to admit the defendant's statement in the Government's case-in-chief." But, as the court also pointed out, federal appellate courts had since applied the majority's decision in *Mezzanatto* to waiver agreements that permit the government to introduce a defendant's plea-related statements for more than just impeachment, including in the government's case-in-chief, *see United States v. Burch*, 156 F.3d 1315, 1321-22 (D.C. Cir. 1998), and in the government's rebuttal, *see United States v. Rebbe*, 314 F.3d 402, 407 (9th Cir. 2002). *Hardwick*, 544 F.3d at 570; *see also United States*

*v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004); *United States v. Krilich*, 159 F.3d 1020, 1025-26 (7th Cir. 1998).

¶34 Like the court in *Hardwick*, "[w]e are persuaded by the reasoning of these courts . . . ." 544 F.3d at 570. We therefore find Crockwell's waiver of the protection afforded under Rule 410, Ariz. R. Evid., and Rule 17.4(f), Ariz. R. Crim. P., permitting the state to introduce his April 11 statements in its case-in-chief, is enforceable. The respondent judge therefore erred by limiting the state's use of that statement to impeachment of Crockwell, "should [he] testify."

¶35 We now turn to the statements Crockwell made in July and August. As we previously noted, in his response to the state's special action petition, Crockwell addressed the three statements simultaneously, as if the March 30 letter and the rules applied equally to them all. The respondent judge appears to have done the same. But the March 30 letter only applied to the April 11 debriefing. It specified that the required debriefing had to take place "no later than April 13, 2007," before the state would offer Crockwell a plea agreement. Thus, the letter cannot serve as a justification for the respondent judge's restricting the state's use of the subsequent statements to impeachment purposes. Moreover, as we have previously stated, the letter's first exception for false information would apply in any event. And, as we concluded above, the applicable rules of evidence and criminal procedure do not protect the July and August statements.

24

¶36 The agreement that governed the July and August statements was the plea agreement. Among its special terms was Crockwell's agreement to "cooperate with authorities in investigating and prosecuting those criminals and organizations of which he is aware[,] including testifying fully, truthfully, and completely in the prosecution of any co-defendants or co-conspirators." The plea agreement did not protect Crockwell with respect to any untruthful statements. Indeed, the plea agreement provided that "[s]hould the State in its sole discretion determine the Defendant has been untruthful . . . the State may in its sole discretion elect to declare this agreement[] null and void thus placing the parties in the same position they were before this agreement was entered . . . ." It further stated: "Nothing in this agreement shields [Crockwell] in anyway [sic] from any consequence of any act of untruthfulness in the performance of [his] obligations pursuant to this agreement." The state withdrew from the plea agreement after it learned in August 2007 that Crockwell had not been truthful in April or July. That was its right. Thus, the respondent judge abused his discretion by granting Crockwell's motion in limine, preventing the state from using the July and August statements in its case-in-chief and only allowing their use to impeach Crockwell should he testify.

**Conclusion**

25

¶37    For the reasons stated herein, we conclude the respondent judge abused his discretion by granting Crockwell's motion in limine to preclude the state from using in its case-in-chief statements he had made to law enforcement officers on April 11, 2007, before he entered into a plea agreement, and statements he made on July 12 and August 27, 2007, after he entered into an agreement from which the state subsequently withdrew after Crockwell breached the agreement. The respondent erred as a matter of law and thereby abused his discretion. *See* Ariz. R. P. Spec. Actions 3(c); *see also State v. Kelly*, 210 Ariz. 460, ¶ 17, 112 P.3d 682, 687 (App. 2005) ("error of law may constitute an abuse of discretion"). We therefore grant the state special action relief and vacate the respondent judge's orders of October 21, 2008, and January 5, 2009.


                _____
                JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
PHILIP G. ESPINOSA, Judge