IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**THE STATE OF ARIZONA,**
*Appellee,*

*v.*

**ANTHONY DURAN,**
*Appellant.*

---

No. CR-13-0087-PR
Filed November 7, 2013

---

Appeal from the Superior Court in Cochise County
The Honorable Wallace R. Hoggatt, Judge
No. CR-201100113
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
231 Ariz. 261, 293 P.3d 537 (2013)
**VACATED**

---

COUNSEL:

Thomas C. Horne, Arizona Attorney General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals, Kathryn A. Damstra (argued), Assistant Attorney General, Tucson, for State of Arizona

The Law Office of Robert J. Trebilcock, Robert J. Trebilcock (argued), Phoenix, for Anthony Duran

---

JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE BRUTINEL, and JUSTICE TIMMER joined

---

JUSTICE PELANDER, opinion of the Court:

¶1 After rejecting a proposed plea agreement, the trial court erroneously ruled that the State could impeach defendant Anthony Duran with statements he made in connection with his change of plea if he testified inconsistently with them at trial. Duran objected to this ruling

and asserts it caused him to choose not to testify. We hold that Duran cannot raise the trial court's error on appeal because a defendant must testify to preserve a challenge to a ruling permitting the use of evidence for impeachment.

## I.

¶2     The State charged Duran with four felonies relating to an assault. After agreeing to plead guilty to a lesser charge, Duran admitted at a change-of-plea hearing that he was an accomplice. But when he was interviewed for a presentence report, he denied any involvement. The trial court later rejected the plea agreement, and Duran was tried before a jury.

¶3     Duran moved in limine to prevent the State from using at trial statements he made during the change-of-plea hearing. The trial court ruled that the statements would be admissible to impeach Duran if he testified inconsistently with them. Duran did not testify at trial, and the jury found him guilty on all counts.

¶4     Duran moved for a new trial, arguing in part that the trial court erred in ruling that the State could use his change-of-plea statements to impeach him. The court acknowledged that its pretrial ruling directly conflicted with Arizona Rule of Criminal Procedure 17.4(f), which expressly bars the use at trial of statements made at plea proceedings when a plea agreement is rejected or withdrawn.[1] The court denied the motion, however, concluding that because Duran did not testify, it could not determine whether he was "prejudiced or legally harmed" by the error.

¶5     The court of appeals affirmed. *State v. Duran*, 231 Ariz. 261, 265 ¶ 18, 293 P.3d 537, 541 (App. 2013). The court reasoned that by not testifying at trial, Duran did "not preserve[] for [appellate] review the pretrial ruling permitting the state to use his change-of-plea statements for

---

[1]     We refer here to the version of Rule 17.4(f) in effect when Duran was tried in 2011. Effective January 1, 2012, that rule was amended to incorporate by reference Rule 410, Ariz. R. Evid., which generally prohibits use of plea-related statements at later proceedings. *See* Ariz. R. Evid. 410(a)(3).

impeachment." *Id.* at 263 ¶ 11, 293 P.3d at 539. In so holding, the court extended the rule of *State v. Allie*, 147 Ariz. 320, 327, 710 P.2d 430, 437 (1985), which involved impeachment with prior convictions, to rulings permitting impeachment with plea-related statements. *Duran*, 231 Ariz. at 263 ¶ 11, 293 P.3d at 539. Although noting that Duran had not preserved the issue, *id.*, the court stated that harmless-error review applied, but concluded that Duran's failure to testify "render[ed] this inquiry 'wholly speculative.'" *Id.* at ¶¶ 14–15 (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

¶6　　We granted review because this case presents a recurring legal issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶7　　Generally, a defendant preserves for appeal any issues raised in a motion in limine and ruled upon without the need for further objection at trial. *State v. Anthony*, 218 Ariz. 439, 446 ¶ 38, 189 P.3d 366, 373 (2008); *see also* Ariz. R. Evid. 103(b). Fifty years ago, however, we recognized an exception to that rule, requiring a defendant to testify in order to preserve for appeal a trial court's ruling permitting the impeachment use of prior-conviction evidence. *State v. Barker*, 94 Ariz. 383, 386, 385 P.2d 516, 518 (1963). We concluded that, when the defendant does not take the stand, a reviewing court has "nothing . . . on which to predicate a reversal" of the challenged ruling because whether the state would have used the prior conviction for impeachment and whether the trial court would have adhered to its earlier ruling were speculative. *Id.*

¶8　　In the decades since *Barker*, we have repeatedly reaffirmed its "announced rule," *id.*, requiring a defendant to testify in order to appeal from a pretrial ruling allowing the use of prior convictions for impeachment. *See, e.g.*, *State v. Smyers*, 207 Ariz. 314, 318 ¶ 15, 86 P.3d 370, 374 (2004); *Allie*, 147 Ariz. at 327, 710 P.2d at 437. In *Allie*, we noted our agreement with *Luce*, in which the United States Supreme Court held that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify," *Luce*, 469 U.S. at 43.

¶9　　Significantly, citing the policy justifications discussed in *Barker* and our post-*Luce* cases, we have extended the testimony requirement to

defendants seeking to challenge the impeachment use of evidence other than prior convictions. *See State v. Gonzales*, 181 Ariz. 502, 512, 892 P.2d 838, 848 (1995) (holding that, "by choosing not to testify, Gonzales waived his right to claim that the trial court erroneously ruled involuntary statements admissible to impeach"); *State v. Conner*, 163 Ariz. 97, 103, 786 P.2d 948, 954 (1990) (holding that, because the defendant did not testify, "he may not attack the pretrial ruling conditionally admitting his statements [obtained in violation of *Miranda*] for impeachment in the event he did testify").

¶10     Duran argues that *Barker* and its progeny should not control here because a trial court's erroneous ruling allowing impeachment use of a defendant's change-of-plea statements implicates "different interests and protections than those involving mere impeachment with prior convictions." The trial court's erroneous pretrial ruling, Duran contends, "impermissibly infringed on his decision" whether to relinquish his Fifth Amendment right to remain silent and to instead testify at trial. Relying on *State v. Vargas*, 127 Ariz. 59, 618 P.2d 229 (1980), Duran further asserts that the trial court's error cannot be deemed harmless. We are not persuaded.

¶11     In *Vargas*, we reversed the defendant's convictions based on the trial court's error "in permitting the state to impeach defendant's testimony by means of [a] document he signed during plea negotiations." *Id.* at 61, 618 P.2d at 231. There, unlike in this case, the defendant testified at trial and was repeatedly impeached with the inadmissible plea-related evidence, on which the state also relied in its closing argument. *Id.* at 60, 618 P.2d at 230. On that record, we could not find the error harmless. *Id.* at 61, 618 P.2d at 231.

¶12     *Vargas* does not address the issue before us—whether a defendant must testify to preserve the issue for appeal—but instead merely suggests that if a defendant does testify, the incorrect admission at trial of plea-related statements will be reviewed for harmless error. Because Vargas testified, we were able to undertake the fact-specific inquiry whether the admission of the plea-related statements was harmless. Duran, in contrast, did not testify, and assessing the impact of the trial court's error would be inherently speculative, as we would have to assume that Duran would have testified absent the error, that the trial court would have adhered to its initial ruling, and that the State would in fact have

impeached him with his plea-related statements. *See Conner*, 163 Ariz. at 102, 786 P.2d at 953; *Barker*, 94 Ariz. at 386, 385 P.2d at 518. Reversible error cannot rest on such conjecture, and under these circumstances the harmless-error analysis employed in *Vargas* is inapplicable.

¶13 Duran, however, contends his claim of reversible error is not speculative and therefore is reviewable because the State clearly intended to use his change-of-plea statements if he testified. He asks us to infer that he would have testified but for the trial court's erroneous pretrial ruling. That is so, Duran argues, because the State's evidence of his guilt was "relatively weak," and he "had no prior felony record," no "prior record of dishonesty," and (besides his change-of-plea statements) made no "other incriminating statements to law enforcement or others."

¶14 But as the Court observed in *Luce*, "an accused's decision whether to testify 'seldom turns on the resolution of one factor,'" and therefore "a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." 469 U.S. at 42 (quoting *New Jersey v. Portash*, 440 U.S. 450, 467 (1979) (Blackmun, J., dissenting)). To avoid speculation on whether a defendant would have testified and how the trial would have otherwise played out, this Court has long imposed the testimony requirement. *See Conner*, 163 Ariz. at 102, 786 P.2d at 953 (noting that "without defendant's testimony, the court is left to speculate on review whether the state would have in fact sought to impeach defendant . . . and whether the adverse ruling in fact motivated defendant's decision not to testify").

¶15 Duran further argues that *Luce* and *Allie* are inapplicable because, unlike in those cases, the trial court's erroneous ruling here hinged on a pure question of law, was directly governed by applicable rules, and did not involve any "balancing of interests" under Arizona Rule of Evidence 403 or otherwise. Some courts have found similar points well taken. *See Vermont v. Amidon*, 967 A.2d 1126, 1129–32 (Vt. 2008) (distinguishing *Luce* and holding that the defendant's failure to testify did not preclude appellate review of an erroneous trial court ruling permitting the use of plea-related statements for impeachment, when "the potential importance of the in-limine ruling to defendant's decision not to testify [was] manifest"); *cf. Luce*, 469 U.S. at 44 (Brennan, J., concurring) (suggesting that the testimony requirement might not apply when "the determinative question turns on legal and not factual considerations"); *United States v.*

*Velez*, 354 F.3d 190, 194 n.4 (2d Cir. 2004) (noting that, "even if defendant were challenging the District Court's in limine ruling," *Luce* would not control because that ruling did "not depend on the fact-specific balancing of prejudicial effect and probative value"). But we do not find these distinctions significant enough to deviate from the testimony requirement, particularly in light of our decision in *Gonzales*.

¶16 In *Gonzales*, we applied the testimony requirement even though the appeal raised a purely legal issue—whether the trial court erred in allowing the use of the defendant's allegedly involuntary statements for impeachment. 181 Ariz. at 512, 892 P.2d at 848. Unlike in the prior-conviction context, the trial court's ruling in *Gonzales* involved no discretionary determinations or balancing of competing interests, as use of involuntary statements for impeachment is strictly prohibited. *See Mincey v. Arizona*, 437 U.S. 385, 398 (1978). Nevertheless, we concluded that "[t]he same policy considerations that led to the result in *Conner* are present here." *Gonzales*, 181 Ariz. at 512, 892 P.2d at 848. Duran has not explained, nor can we discern, why the rationale and result in *Gonzales* should not control in this case as well.

¶17 Disregarding *Gonzales*, Duran instead relies on our pre-*Luce* decision in *State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142 (1975). In that case, the defendant challenged on appeal a pretrial ruling allowing the state to question him about his "subsequent bad acts," which we found irrelevant. *Id.* at 344–45, 541 P.2d at 1146–47. The state argued in response that Tuell's failure to testify at trial rendered the issue "moot on appeal." *Id.* In rejecting that argument, we noted that the record reflected that the trial court's ruling clearly had a "chilling" effect on the defendant's decision to not testify and thus "effectively precluded [him] from exercising his constitutional right to testify" in his defense. *Id.* at 345, 541 P.2d at 1147.

¶18 In *Tuell*, neither the parties nor this Court cited *Barker* or addressed whether defendants generally must testify in order to preserve for appeal a pretrial ruling allowing the use of impeachment evidence. *Id.* In the years since, we have neither affirmed nor expressly overruled *Tuell*; but our subsequent case law effectively strips that decision of precedential value. *Tuell* is incompatible with *Gonzales*'s holding requiring a defendant to testify in order to preserve an objection to a trial court's pretrial ruling allowing impeachment with involuntarily-obtained statements. We

therefore disavow *Tuell* insofar as it is inconsistent with our post-*Luce* cases, including *Gonzales* and our opinion today.

**¶19** We take this opportunity, however, to clarify the legal basis for our conclusion here. Despite language in some of our prior cases, the trial court's error was not "waived" or forfeited by the defendant's failure to testify. *See Gonzales*, 181 Ariz. at 512, 892 P.2d at 848. Nor do we view the injury to Duran from the trial court's error as merely "hypothetical." *See Conner*, 163 Ariz. at 103, 786 P.2d at 954. Rather, as a matter of policy, when a trial court rules certain evidence admissible for impeachment purposes if the defendant testifies, a defendant must both object and testify to preserve the issue for appellate review. We will not assume that the defendant would have testified but for the adverse ruling, or that the trial court would have adhered to its initial ruling had the defendant taken the stand. (Indeed, in view of its subsequent, ready acknowledgment of error, the trial court here might well have corrected its in-limine ruling had the impeachment issue been raised again during trial.)

**¶20** Requiring defendants to testify, as the Supreme Court reasoned in *Luce*, allows the reviewing court to assess the effect of any erroneous impeachment in light of the record as a whole. 469 U.S. at 42. As we implicitly acknowledged in *Gonzales,* this rationale applies with equal force regardless of the nature or source of the contested impeachment evidence. We therefore hold that when a defendant objects to a trial court's ruling permitting the use of impeachment evidence, he must testify to preserve the objection for appellate review. Because Duran chose not to testify, he did not preserve the issue for appeal, and we therefore do not consider it on the merits.

**¶21** We reaffirm and apply this bright-line rule mindful of its impact on some defendants.[2] Broadly requiring a defendant to testify in order to

---

[2] Duran suggests that extending the testimony requirement to the plea-statement context could discourage "full and frank candor" during plea negotiations. This argument presumes that defendants will hedge their statements in plea negotiations based on the prospect that trial judges might later, contrary to the applicable rules, allow impeachment with those statements. That risk, however, is too attenuated to warrant an exception to the testimony requirement.

preserve the impeachment issue for appeal might adversely affect some defendants who decide not to testify based solely on a trial court's erroneous ruling. But our rule appropriately avoids the need for conjecture in many, if not most, cases in which a court would have to speculate on a host of variables, including whatever motivational factors might have influenced a defendant's decision to not testify.

¶22    Undoubtedly, the trial court's error in this case left Duran with a difficult choice: take the stand and risk impeachment with inculpatory statements made at his change-of-plea proceeding, or refrain from testifying and forego any chance of urging that ground for reversal on appeal. The United States Supreme Court, however, has rejected the notion that such an outcome is "overly harsh." *Ohler v. United States*, 529 U.S. 753, 759–60 (2000) (quoting *McGautha v. California*, 402 U.S. 183, 215 (1971)) ("[I]t is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh [the] pros and cons in deciding whether to testify."). More importantly, we believe that the benefits of our bright-line approach will outweigh, in most cases, any unfairness to defendants, particularly as it does not prevent them from seeking special-action review of a denial of a motion in limine. *See State ex rel. Romley v. Martin*, 203 Ariz. 46, 47 ¶¶ 4–5, 49 P.3d 1142, 1143 (App. 2002) (accepting special action review of in-limine rulings that prior convictions could not be used for impeachment), *aff'd*, 205 Ariz. 279, 69 P.3d 1000 (2003). Through that procedure, erroneous rulings regarding impeachment evidence may be addressed and rectified before trial.

### III.

¶23    We vacate the court of appeals' opinion and affirm Duran's convictions and sentences.